## NATIONAL LABOR RELATIONS BOARD *v.* TRUITT MANUFACTURING CO.

No. 486. Argued March 29, 1956.—Decided May 7, 1956.

*David P. Findling* argued the cause for petitioner. With him on the brief were *Solicitor General Sobeloff, Theophil C. Kammholz, Dominick L. Manoli* and *Frederick U. Reel.*

*R. D. Douglas, Jr.* argued the cause for respondent. With him on the brief was *Whiteford S. Blakeney.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The National Labor Relations Act makes it an unfair labor practice for an employer to refuse to bargain in good faith with the representative of his employees.[1]

---

[1] "SEC. 8. (a) It shall be an unfair labor practice for an employer—

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9 (a).

"(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms

The question presented by this case is whether the National Labor Relations Board may find that an employer has not bargained in good faith where the employer claims it cannot afford to pay higher wages but refuses requests to produce information substantiating its claim.

The dispute here arose when a union representing certain of respondent's employees asked for a wage increase of 10 cents per hour. The company answered that it could not afford to pay such an increase, it was undercapitalized, had never paid dividends, and that an increase of more than 2½ cents per hour would put it out of business. The union asked the company to produce some evidence substantiating these statements, requesting permission to have a certified public accountant examine the company's books, financial data, etc. This request being denied, the union asked that the company submit "full and complete information with respect to its financial standing and profits," insisting that such information was pertinent and essential for the employees to determine whether or not they should continue to press their demand for a wage increase. A union official testified before the trial examiner that "[W]e were wanting anything relating to the Company's position, any records or what have you, books, accounting sheets, cost expenditures, what not, anything to back the Company's position that they were unable to give any more money." The company refused all the requests, relying solely on the statement that "the information . . . is not pertinent to

---

and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession . . . ." 49 Stat. 452–453, as amended, 61 Stat. 140–142, 29 U. S. C. §§ 158 (a) (5), 158 (d).

this discussion and the company declines to give you such information; You have no legal right to such."

On the basis of these facts the National Labor Relations Board found that the company had "failed to bargain in good faith with respect to wages in violation of Section 8 (a)(5) of the Act." 110 N. L. R. B. 856. The Board ordered the company to supply the union with such information as would "substantiate the Respondent's position of its economic inability to pay the requested wage increase." The Court of Appeals refused to enforce the Board's order, agreeing with respondent that it could not be held guilty of an unfair labor practice because of its refusal to furnish the information requested by the union. 224 F. 2d 869. In *Labor Board* v. *Jacobs Mfg. Co.,* 196 F. 2d 680, the Second Circuit upheld a Board finding of bad-faith bargaining based on an employer's refusal to supply financial information under circumstances similar to those here. Because of the conflict and the importance of the question we granted certiorari. 350 U. S. 922.

The company raised no objection to the Board's order on the ground that the scope of information required was too broad or that disclosure would put an undue burden on the company. Its major argument throughout has been that the information requested was irrelevant to the bargaining process and related to matters exclusively within the province of management. Thus we lay to one side the suggestion by the company here that the Board's order might be unduly burdensome or injurious to its business. In any event, the Board has heretofore taken the position in cases such as this that "It is sufficient if the information is made available in a manner not so burdensome or time-consuming as to impede the process of bargaining." [2] And in this case the Board has held

---

[2] *Old Line Life Ins. Co.,* 96 N. L. R. B. 499, 503; *Cincinnati Steel Castings Co.,* 86 N. L. R. B. 592, 593.

substantiation of the company's position requires no more than "reasonable proof."

We think that in determining whether the obligation of good-faith bargaining has been met the Board has a right to consider an employer's refusal to give information about its financial status. While Congress did not compel agreement between employers and bargaining representatives, it did require collective bargaining in the hope that agreements would result. Section 204 (a) (1) of the Act admonishes both employers and employees to "exert every reasonable effort to make and maintain agreements concerning rates of pay, hours, and working conditions . . . ." [3] In their effort to reach an agreement here both the union and the company treated the company's ability to pay increased wages as highly relevant. The ability of an employer to increase wages without injury to his business is a commonly considered factor in wage negotiations.[4] Claims for increased wages have sometimes been abandoned because of an employer's unsatisfactory business condition; employees have even voted to accept wage decreases because of such conditions.[5]

Good-faith bargaining necessarily requires that claims made by either bargainer should be honest claims. This is true about an asserted inability to pay an increase in wages. If such an argument is important enough to pre-

[3] 61 Stat. 154, 29 U. S. C. § 174 (a) (1).

[4] See Sherman, Employer's Obligation to Produce Data for Collective Bargaining, 35 Minn. L. Rev. 24; Dunlop, The Economics of Wage-Dispute Settlement, 12 Law & Contemp. Prob. 281, 290; What Kind of Information Do Labor Unions Want in Financial Statements?, 87 J. Accountancy 368; How Collective Bargaining Works (Twentieth Century Fund, 1942) 453.

[5] Daily Labor Report, No. 156: A4–A5 (Bureau of National Affairs, Aug. 12, 1954); 35 Lab. Rel. Rep. 106; Union Votes Wage Freeze to Aid Rice-Stix, St. Louis Globe-Democrat, Nov. 25, 1954, p. 1, col. 4; Studebaker Men Vote for Pay Cuts, N. Y. Times, Aug. 13, 1954, p. 1, col. 5.

sent in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy. And it would certainly not be farfetched for a trier of fact to reach the conclusion that bargaining lacks good faith when an employer mechanically repeats a claim of inability to pay without making the slightest effort to substantiate the claim. Such has been the holding of the Labor Board since shortly after the passage of the Wagner Act. In *Pioneer Pearl Button Co.*, decided in 1936, where the employer's representative relied on the company's asserted "poor financial condition," the Board said: "He did no more than take refuge in the assertion that the respondent's financial condition was poor; he refused either to prove his statement, or to permit independent verification. This is not collective bargaining." 1 N. L. R. B. 837, 842–843. This was the position of the Board when the Taft-Hartley Act was passed in 1947 and has been its position ever since.[6] We agree with the Board that a refusal to attempt to substantiate a claim of inability to pay increased wages may support a finding of a failure to bargain in good faith.

The Board concluded that under the facts and circumstances of this case the respondent was guilty of an unfair labor practice in failing to bargain in good faith. We see no reason to disturb the findings of the Board. We do not hold, however, that in every case in which economic inability is raised as an argument against increased wages it automatically follows that the employees are entitled to substantiating evidence. Each case must turn upon its particular facts.[7] The inquiry must always be whether or not under the circumstances of the particular case the

[6] See, *e. g.*, *Southern Saddlery Co.*, 90 N. L. R. B. 1205, 1206–1207; *McLean-Arkansas Lumber Co.*, 109 N. L. R. B. 1022, 1035–1038; *Jacobs Manufacturing Co.*, 94 N. L. R. B. 1214, 1221–1222, enforced, 196 F. 2d 680; and cases therein cited.

[7] See *Labor Board* v. *American Ins. Co.*, 343 U. S. 395, 409–410.

statutory obligation to bargain in good faith has been met. Since we conclude that there is support in the record for the conclusion of the Board here that respondent did not bargain in good faith, it was error for the Court of Appeals to set aside the Board's order and deny enforcement.

*Reversed.*

Mr. Justice Frankfurter, whom Mr. Justice Clark and Mr. Justice Harlan join, concurring in part and dissenting in part.

This case involves the nature of the duty to bargain which the National Labor Relations Act imposes upon employers and unions. Section 8 (a)(5) of the Act makes it "an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees," and § 8 (b)(3) places a like duty upon the union *vis-à-vis* the employer. Section 8 (d) provides that "to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession . . . ." 61 Stat. 142, 29 U. S. C. § 158 (d).

These sections obligate the parties to make an honest effort to come to terms; they are required to try to reach an agreement in good faith. "Good faith" means more than merely going through the motions of negotiating; it is inconsistent with a predetermined resolve not to budge from an initial position. But it is not necessarily

incompatible with stubbornness or even with what to an outsider may seem unreasonableness. A determination of good faith or of want of good faith normally can rest only on an inference based upon more or less persuasive manifestations of another's state of mind. The previous relations of the parties, antecedent events explaining behavior at the bargaining table, and the course of negotiations constitute the raw facts for reaching such a determination. The appropriate inferences to be drawn from what is often confused and tangled testimony about all this makes a finding of absence of good faith one for the judgment of the Labor Board, unless the record as a whole leaves such judgment without reasonable foundation. See *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474.

An examination of the Board's opinion and the position taken by its counsel here disclose that the Board did not so conceive the issue of good-faith bargaining in this case. The totality of the conduct of the negotiation was apparently deemed irrelevant to the question; one fact alone disposed of the case. "[I]t is settled law [the Board concluded], that when an employer seeks to justify the refusal of a wage increase upon an economic basis, as did the Respondent herein, good-faith bargaining under the Act requires that upon request the employer attempt to substantiate its economic position by reasonable proof." 110 N. L. R. B. 856.

This is to make a rule of law out of one item—even if a weighty item—of the evidence. There is no warrant for this. The Board found authority in *Labor Board* v. *Jacobs Mfg. Co.,* 196 F. 2d 680. That case presented a very different situation. The Jacobs Company had engaged in a course of conduct which the Board held to be a violation of § 8 (a)(5). The Court of Appeals agreed that in light of the whole record the Board was entitled to find that the employer had not bargained in good faith. Its refusal to open its "books and sales records" for union

perusal was only part of the recalcitrant conduct and only one consideration in establishing want of good faith.* The unfair labor practice was not founded on this refusal, and the court's principal concern about the disclosure of financial information was whether the Board's order should be enforced in this respect. The court sustained the Board's requirement for disclosure which "will be met if the respondent produces whatever relevant information it has to indicate whether it can or cannot afford to comply with the Union's demands." 196 F. 2d 680, 684. This is a very far cry indeed from a ruling of law that failure to open a company's books establishes lack of good faith. Once good faith is found wanting, the scope of relief to be given by the Board is largely a question of administrative discretion. Neither *Jacobs* nor any other court of appeals' decision which has been called to our attention supports the rule of law which the Board has fashioned out of one thread drawn from the whole fabric of the evidence in this case.

The Labor Board itself has not always approached "good faith" and the disclosure question in such a mechanical fashion. In *Southern Saddlery Co.*, 90 N. L. R. B. 1205, the Board also found that § 8 (a)(5)

---

* "The respondent contends that it was under no statutory duty to confer with the union after the second meeting since all of the issues had been fully explored and the position of both parties expressed. Whether this was true, however, was a question of fact which the Board found adversely to the respondent. Since at both the meetings the respondent took the position that discussion of wage increases would be futile because it was financially unable to make them, and since it refused to discuss the other subjects at all, the Board was justified in concluding that the respondent had refused to bargain in good faith as the Act requires. Collective bargaining in compliance with the statute requires more than virtual insistence upon a prejudgment that no agreement could be reached by means of a discussion." *Labor Board* v. *Jacobs Mfg. Co.*, 196 F. 2d 680, at 683.

had been violated. But how differently the Board there considered its function.

"Bargaining in good faith is a duty on both sides to enter into discussions with an open and fair mind and a sincere purpose to find a basis for agreement touching wages and hours and conditions of labor. In applying this definition of good faith bargaining to any situation, the Board examines the Respondent's conduct as a whole for a clear indication as to whether the latter has refused to bargain in good faith, and the Board usually does not rely upon any one factor as conclusive evidence that the Respondent did not genuinely try to reach an agreement." 90 N. L. R. B. 1205, 1206.

The Board found other factors in the *Southern Saddlery* case. The employer had made no counter-proposals or efforts to "compromise the controversy." Compare, *McLean-Arkansas Lumber Co., Inc.,* 109 N. L. R. B. 1022. Such specific evidence is not indispensable, for a study of all the evidence in a record may disclose a mood indicative of a determination not to bargain. That is for the Board to decide. It is a process of inference-drawing, however, very different from the *ultra vires* law-making of the Board in this case.

Since the Board applied the wrong standard here, by ruling that Truitt's failure to supply financial information to the union constituted *per se* a refusal to bargain in good faith, the case should be returned to the Board. There is substantial evidence in the record which indicates that Truitt tried to reach an agreement. It offered a 2½-cent wage increase, it expressed willingness to discuss with the union "at any time the problem of how our wages compare with those of our competition," and it continued throughout to meet and discuss the controversy with the union.

Because the record is not conclusive as a matter of law, one way or the other, I cannot join in the Court's disposition of the case. To reverse the Court of Appeals without remanding the case to the Board for further proceedings, implies that the Board would have reached the same conclusion in applying the right rule of law that it did in applying a wrong one. I cannot make such a forecast. I would return the case to the Board so that it may apply the relevant standard for determining "good faith."