**SYLVANIA ELECTRIC PRODUCTS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 5704.**

United States Court of Appeals
First Circuit.
June 6, 1961.

Gerard D. Reilly, Washington, D. C., with whom Lawrence T. Zimmerman, Washington, D. C., Charles Hansen and Bruce Carswell, New York City, and Reilly & Wells, Washington, D. C., were on brief, for petitioner.

Marcel Mallet-Prevost, Assistant General Counsel, Washington, D. C., with whom Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Duane B. Beeson and Vincent W. Bradley, Attorneys, Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This petition to review and set aside and cross petition to enforce an order of the National Labor Relations Board pose a question with respect to the duty of an employer to divulge the cost of a noncontributory group insurance program which it provides for its employees to the union representing an appropriate employee unit in one of its plants. The basic facts are not in dispute and can be briefly summarized.

The petitioner-employer, Sylvania Electric Products, Inc., is a multiplant Delaware corporation engaged in several states of the United States in the business of manufacturing electrical and electronic equipment of one sort or another.[1] For many years the production and main-

tenance employees at its plants in Seneca Falls, New York,[2] have been represented by United Steelworkers of America, AFL–CIO, and over that period it has negotiated collective bargaining agreements with that Union.

In the summer of 1958 as a prelude to, and later in the fall of that year in the course of negotiations for, a new collective bargaining agreement, the Union asked Sylvania for information with respect to its group insurance program. Stated generally the Union asked for information as to the level of benefits of the program, the scope of its coverage, the amount of claims paid under its various provisions and its cost. Sylvania eventually acceded to the Union's request for information except for its request for current premium rates and the amount of the premiums paid during the two preceding years.

The Union claimed that it could not intelligently frame its economic demands without knowing the present and past cost of Sylvania's group insurance program, and also that this information would help it to determine whether the best coverage for the money was being received and whether it was possible to get the same or better coverage from another carrier with a possible reduction in cost and commensurate increase in actual wages. Sylvania, although it told the Union that it had always taken the cost of its insurance program into account in arriving at the "level of benefits to be offered to the employees," persisted in its refusal to give the cost information requested. At one time or another during the collective bargaining negotiations it gave three reasons for its position. It first asserted that it based its program not so much on cost as on benefits provided and that "the task of digging up the information" would severely burden its personnel department.[3] Later

---

1. There can be no doubt whatever that it is engaged in interstate commerce within the meaning of the Act.

2. This court's jurisdiction rests upon the fact that the employer has plants in Massachusetts, New Hampshire and

Maine and therefore transacts business in this circuit.

3. There is basis for this assertion, for Sylvania paid its insurance carrier an advance annual premium on its over-all policy covering not only the employees

it asserted that the Union had no legal right to the information. Both sides maintained their respective positions throughout the negotiations but nevertheless without a strike a collective bargaining agreement was reached soon after the previous one expired.

In the meantime the Union filed a charge on which in due course a complaint issued charging Sylvania with failing and refusing to bargain collectively with the Union in violation of § 8(a) (5) and (1) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 158(a) (1, 5), by refusing to accede to the Union's request for the premium rates and the premiums paid for the past two years by Sylvania for its wholly non-contributory group insurance program.

The trial examiner, after proceedings under 10(c) of the Act, 29 U.S.C.A. § 160(c), filed a carefully prepared intermediate report in which he concluded that Sylvania was under no duty to disclose the cost of its insurance program to the Union so that no unfair labor practice had been committed. He therefore recommended that the complaint be dismissed.

In his intermediate report the trial examiner was careful to draw two distinctions. He distinguished between the *benefits* of group employee insurance plans which, in major reliance upon this court's decision in W. W. Cross & Co. v. N. L. R. B., 1 Cir., 1949, 174 F.2d 875, 878, he ruled were emoluments flowing from the employment relationship and hence were "wages" within the meaning of the Act, and the cost of obtaining those benefits. And he distinguished between the cost of group employee insurance plans defrayed in part by contributions from employees and the cost of non-contributory plans like the present, observing that the cost of plans of the former sort were vitally related to wages since they were borne in part by deductions

from the employees' pay checks, whereas the cost of non-contributory plans were comparable to an employer's ordinary costs of operation such as the cost of raw materials or the interest paid on indebtedness.

The Board on General Counsel's objections to the intermediate report rejected the distinctions drawn by the trial examiner. It expressed the view that "no valid legal basis exists" for drawing a distinction between the cost of contributory and non-contributory employee group insurance plans. And it grouped both the costs and the benefits of such plans into the single category of "emoluments of value" which it said constituted "wages." It said

"* * * The term 'wages,' concerning which bargaining is required by the Act, has been held to comprehend the emoluments of value which may accrue to employees out of the employment relationship. It seems indisputable to us that, where the employer shoulders the entire cost of a group insurance program, so that the employees themselves are not required to allocate any part of their weekly wages for the purposes, there inures to the employees a benefit which constitutes an emolument of value, and that this benefit flows from the employment relationship. This benefit to the employees which represents part of the remuneration received by them for their labor therefore constitutes 'wages' and, as such, the cost thereof to the Respondent stands on a different footing for purposes of the Act from the operating costs with which it is equated by the Trial Examiner."

On the basis that the premiums paid by Sylvania for its group insurance program constituted "wages" paid to its employees and that therefore the premium cost data requested by the Union related directly to a matter of wages,

at its Seneca Falls plant but also employees at other plants, and thereafter, at the close of the policy year, computations were made to adjust the amount

of that premium to reflect the claims and other cost items that arose during the preceding year. This usually took several months.

the Board concluded that Sylvania had violated § 8(a) (5) and (1) of the Act by refusing to furnish the Union with the data it requested as to the cost of that program. Wherefore it entered the order before us directing Sylvania to cease and desist from refusing to bargain collectively with the Union by refusing to furnish it with the cost data it requested.

■ This court held in W. W. Cross & Co. v. N. L. R. B., supra, that the *benefits* of an employee group insurance plan were "wages" within the meaning of that word as used in the pertinent sections of the Act since they constituted emoluments resulting from employment or direct and immediate economic benefits flowing from the employment relationship, and hence were matters as to which the Act required employers to bargain collectively in good faith with the union representing an appropriate group of employees. We adhere to that decision. Moreover, we might take another step and agree with the trial examiner that the cost of plans to which employees contribute constitutes "wages" by reason of the direct effect of each employee's contribution upon his pay check. It is quite another matter, however, to go further and endorse the Board's broad conclusion that the cost of a group employee insurance program defrayed entirely by the employer also constitutes "wages" to employees. In the absence of any controlling authority, or indeed, of any judicial authority cited or discovered by our own efforts, we decline to take that step.

The premiums Sylvania paid for its non-contributory group insurance program were neither wages nor conditions of employment within any ordinarily accepted meaning of the words used. The Board rested its conclusion that they were emoluments of value to the employees, and hence "wages," on the proposition that had Sylvania not undertaken to provide its employees with insurance coverage they would, if they wanted such coverage, have had to provide it out of their own pockets. But to define an

employer's contribution to a non-contributory welfare program as "wages" to the employees for that reason stretches our language in the Cross case [174 F.2d 878] about "direct and immediate economic benefits flowing from the employment relationship" too far, for it would expand the concept of wages so far as to break down if not destroy, the distinction drawn in the Act between "wages, hours, and other terms and conditions of employment," as to which there is the mutual mandatory duty to bargain collectively, and those other matters as to which "each party is free to bargain or not to bargain, and to agree or not to agree." N. L. R. B. v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823. Furthermore, inherent in the conclusion reached by the Board, as the trial examiner pointed out, is the inarticulate premise that any cost saving to an employer is presumptively an increase in the employees' wages. While no doubt employer costs affect wages, a direct relationship between them is at the best speculative, and not in accord with current business economy or business thinking. The long and short of the matter is that what Sylvania paid for its non-contributory group insurance program, in our opinion, was neither a wage "nor a term or condition of employment," within any generally accepted meaning of the terms.

■ That is not to say, however, that under no circumstances is a union entitled to information as to the cost of non-contributory programs like the present. The benefits of plans like Sylvania's constitute "wages" to its employees. W. W. Cross & Co. v. N. L. R. B., supra. Thus to meet the requirement of good faith in bargaining with respect to benefits as wages, an employer must make available to the employees' representative whatever facts and data may be relevant and necessary to informed and realistic bargaining as to benefits. Yawman and Erbe, 89 N.L.R.B. 881, enforced, 187 F. 2d 947. See International Woodworkers of America, etc., 2 Cir., 1951, v. N. L. R.

B., 1959, 105 U.S.App.D.C. 37, 263 F.2d 483; Boston Herald-Traveler Corp. v. N. L. R. B., 1 Cir., 1955, 223 F.2d 58, and cases cited therein. It was therefore incumbent upon Sylvania to disclose the scope and amount of the coverage afforded by its plan as it did. Its duty of disclosure does not, however, necessarily stop there for the Court in N. L. R. B. v. Truitt Mfg. Co., 1956, 351 U.S. 149, 76 S.Ct. 753, 756, 100 L.Ed. 1027, although stating that each case must be decided on its own particular facts and that "The inquiry must always be whether or not under the circumstances of the particular case the statutory obligation to bargain in good faith has been met," nevertheless held that the Board was warranted in concluding that an employer had failed to bargain in good faith by refusing a union's request for specific data in support of an assertion of financial inability to meet the union's demand for an increase in wages. Thus if Sylvania had refused to accede to the Union's demand for increased or broader insurance coverage for the employees in the unit it represented on the ground of cost, the Union might be entitled to cost information provided, we glean from the opinion in Truitt at page 151 of 351 U.S., at page 755 of 76 S.Ct. its demand for information was not made to impede the bargaining process or to injure or embarrass Sylvania in its business, and provided further, compliance with the Union's request would not be unduly burdensome or time consuming.

Here, however, no issue of cost arose, for Sylvania at no point in its negotiations with the Union interposed cost as a factor bearing on its willingness to consider any proposal the Union might make with respect to changes in its employee insurance program. Saying that it took the cost of its insurance into account in arriving at the "level of benefits to be offered to the employees" is not the equivalent of saying that it would not consider changes in its insurance program on account of cost. Sylvania provided the Union with all the information it required with respect to the scope and amount of the benefits of its insurance program and this is all the Union needed to formulate demands for changes in the program. Demands for other or more extensive coverage could be formulated without reference to cost and so could demands for an increase in cash wages. The cost of the insurance program would become an issue should Sylvania interpose that element as a ground for resisting a request for change in insurance coverage. When that occurs the time will come to decide whether Sylvania should provide cost data to support its position.

A decree will be entered setting aside the order of the National Labor Relations Board.