FRUIT AND VEGETABLE PACKERS AND WAREHOUSEMEN LOCAL 760 Affiliated With the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 16959.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 17, 1962.

Decided Feb. 28, 1963.

Mr. Herbert S. Thatcher, Washington, D. C., for petitioner. Mr. David Previant, Milwaukee, Wis., was on the brief for petitioner. Mr. Hugh Hafer, Seattle, Wash., also entered an appearance for petitioner.

Miss Vivian Asplund, Atty., N. L. R. B., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin Pollack, Atty., N. L. R. B., were on the brief,

for respondent. Mr. Warren M. Davison, Atty., N. L. R. B., also entered an appearance for respondent.

Before BAZELON, Chief Judge, and EDGERTON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The petitioner Union asks us to set aside an order of the National Labor Relations Board dismissing an unfair labor practice complaint filed against George Mick, d/b/a Yakima Frozen Foods. The Union represents workers who had been employed in the Yakima Company's cannery, and the charge preferred by the Union was that certain actions of the Company violated Sections 8(a) (1) and 8(a) (5) of the National Labor Relations Act, 61 Stat. 140–41, 29 U.S.C. § 158(a) (1) and (5) (1958).

In February 1959, following a consent election, the Board certified the Union as the representative of the Company's maintenance, production, and transportation workers, and the Union presented the Company with a proposed contract. During March a series of bargaining sessions took place. The Company steadfastly contended that, because of its precarious financial condition, it could not agree to any provisions that would increase current labor costs. In support of this contention, the Company submitted to the Union a copy of its 1957 balance sheet. It explained that the audit of its books for 1958 had not yet been undertaken, and that the figures contained on the 1957 balance sheet were the latest available. The Union was not satisfied with the information submitted and demanded further proof of the Company's claimed financial weakness, suggesting an audit of the books by the Union's auditor. In response to this, the Company offered to make its books available upon certain conditions, namely:

"1. That the books and records be examined here in our office.

"2. That no information pertaining to whom sales were made or from whom purchases were made would be taken out of the office.

"3. That any questions concerning any aspect of the statement or records would be directed to * * * our accountant.

"4. Whatever accountant the Union desires to appoint would be a Licensed Public Accountant or C.P.A.

"5. Any costs arising from this audit would be borne by the Union."

The Union rejected conditions 3 and 4, making the following statement:

"We are not obligated to do this. We are not willing to agree to your stipulations because we don't have to. We agree that they are not unreasonable but we will not agree to them. The Union insists on being present when the books are audited."

The Trial Examiner found the Company's conduct to be a violation of Section 8(a) (5), but the Board disagreed.

■ The Union argues that the position taken by the Board on this issue contravenes the spirit, if not the precise holding, of National Labor Relations Board v. Truitt Mfg. Co., 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956), and reduces it to a dead letter. We cannot agree. The Truitt case involved an absolute refusal to substantiate claimed financial inability to accept a wage increase, and the Court was careful to disclaim any broader holding than was there required. Id. at 153–154, 76 S.Ct. at 756, 100 L.Ed. 1027. As Justice Frankfurter stated in a separate opinion in Truitt, "The previous relations of the parties, antecedent events explaining behavior at the bargaining table, and the course of negotiations constitute the raw facts for reaching * * * a determination [as to good faith in bargaining]. The appropriate inferences to be drawn from what is often confused and tangled testimony about all this makes a finding of absence of good faith one for the judgment of the Labor Board, unless the record as a whole leaves such judgment without reasonable foundation." Id. at 155, 76 S.Ct. at 757, 100 L.Ed. 1027. What degree of cooperation is to be re-

quired, under any particular set of circumstances, from the parties at the bargaining table, is largely a matter for the Board's expertise. In this case the Company offered to make its books available under certain specified conditions. Clearly there may be circumstances under which a businessman is justified in circumscribing the manner in which he makes his records available for inspection, and in this instance the Union's own representative admitted that the conditions were "not unreasonable." On the whole record, we cannot say that the Board's conclusion that the Company was acting in good faith is erroneous.

At the last bargaining session of this series the Company caused the attendance of three employees, selected by it, to act as "observers." The Union protested their presence and requested the right to have three more employee-observers, selected by the Union, in attendance. The Company refused this request on the ground that it could not afford to have six employees taken away from their work at one time. The Company did offer to postpone the meeting to an off-shift time and allow the Union to choose observers, but this was not done. The Union made no further protest and did not request the Company-selected observers to leave. The Board refused to uphold the finding of the Trial Examiner that the presence of the observers violated Section 8(a) (5).

■ The behavior of the Company in this respect was, we believe, ill considered. Indeed, the Board has held that similar behavior justified a union in refusing to proceed with bargaining under such conditions, and rendered a strike in protest over such action an unfair labor practice strike. L. G. Everist, Inc., 103 N.L.R.B. 308 (1953). Nevertheless, in the instant case the Union elected to proceed with the bargaining session without delay or further protest, rather than accept the Company's offer to cure the wrong by changing the time of the meeting. Under the circumstances, we think the Board cannot be said to have erred in taking the position it did, par-

ticularly in view of the failure of the Union to take the opportunity offered to clear up the problem at the time.

Finally, the Union argues that the Board erroneously dismissed the charge, sustained by the Trial Examiner, that certain other conduct of the Company violated Section 8(a) (1). The bargaining broke down over the issue of Union access to the Company's books and records, and the employees went on strike on March 27. The Company promptly wrote all strikers and informed them that they would be replaced if they did not report back to work by March 31. On April 1, when the strikers came to pick up their pay checks, some of them asked whether they had been discharged. They were told that they had been replaced. The complaint alleged that this statement was untrue because many of the strikers had not, in fact, been replaced, and that the false statement constituted a violation of Section 8(a) (1). The Board did not decide whether, as a matter of law, the making of such a false statement would have been a violation, since it found that there was not substantial evidence to support the Trial Examiner's finding that the statement was false. This finding of the Board was based on the failure of the General Counsel to introduce any affirmative evidence on the question whether the workers had actually been replaced. The Trial Examiner based his finding, impermissibly according to the Board, on certain admissions and inconsistencies in the testimony of Company witnesses, on direct or on cross-examination, rather than on the case initially made by the General Counsel.

■ We think the Board erred in its approach to this problem. The Trial Examiner was entitled, if not obliged, to base his findings on the whole record made before him. Admissions made under cross-examination during any party's presentation are as properly within his cognizance as any other evidence. We conclude, therefore, that there was substantial evidence that would justify—though perhaps not compel—the conclusion that statements by Company officials

that the strikers had been replaced were false. Accordingly, we must remand this portion of the case to the Board for reconsideration. We do not, of course, pass upon whether these allegations of the complaint, if true, state a violation of Section 8(a) (1). That is a matter for the Board in the first instance. Moreover, we assume that upon remand, the Board will be entitled to reconsider in full the adequacy and accuracy of the Trial Examiner's factual conclusions, so long as it does not reject—for want of substantial evidence on the present record —the finding that all strikers had not been replaced as of the time the statements in question were made.

The case is remanded to the Board for further proceedings not inconsistent with this opinion. It may if it sees fit reopen the record for the taking of additional evidence.

So ordered.