The KROGER CO., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
No. 17784.

United States Court of Appeals
Sixth Circuit.

July 3, 1968.

J. Mack Swigert, Cincinnati, Ohio, Robert J. Townsend, Cincinnati, Ohio, on brief; W. F. Sherman, Cincinnati, Ohio, of counsel, for petitioner.

Gary Green, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Richard Adelman, Atty., N. L. R. B., Washington, D. C., on brief, for respondent.

Before EDWARDS and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

This is a petition to review and set aside a finding that petitioner, The Kroger Co., violated sections 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), (5) (1964). The National Labor Relations Board found these violations in Kroger's refusal to disclose its O.R. (operating ratio) program to the union which represents its meat cutters, namely, the Amalgamated Meat Cutters and Butcher Workmen of North America, Local Union No. 430, AFL–CIO. The issues involved clearly have nationwide significance, but the or-

der currently pertains only to the Dayton Division of Kroger.

The disputed portion of the order required the Kroger Co. to cease and desist from:

"Refusing to bargain collectively with Amalgamated Meat Cutters and Butcher Workmen of North America, Local Union No. 430, AFL–CIO, as the exclusive bargaining representative of its employees by refusing to furnish to the Union or its agents information with respect to Respondent's O.R. program relied upon by the Respondent in determining anticipated workloads in the meat departments of its Dayton division and in allocating employee working hours to those departments and the data upon which the O.R. program is based."

The Hearing Examiner stated the major issues in this case as follows:

"The General Counsel contends that the Respondent, in 1965, instituted a new program in its Dayton division (referred to in the records as the 'O. R.' program), which affected the working conditions of employees in the bargaining unit covered by the collective-bargaining agreement between the Respondent and the Union, and thereafter refused, in violation of the Act, to give the Union, upon request, information with respect to that program, which information was relevant and necessary to the administration of the collective-bargaining agreement by the Union.

"On the other hand, the Respondent contends that it had no obligation to supply the information sought, in effect, on the basis that the O.R. program does not involve conditions of work within the meaning of the Board decision assertedly controlling here, and that the General Counsel failed to prove that the information sought was necessary or relevant to the processing of any specific outstanding problem between the Union and the Respondent.

"The Respondent further contends that * * * Respondent should not be required to provide information with respect to the O.R. program because it is confidential and a trade secret."

Five facets of this record require mention. The first is that the union request for disclosure of the O.R. program was cast in about as broad language as the Board order we have just quoted.

Second, this record reveals a long-continuing collective bargaining relationship between this company and this union, beginning in 1943 and extending down to the closing of this hearing, with no showing of any current contract negotiation needs or any currently unsolved grievances.

Third, Kroger seems to have taken great pains not to justify its positions on work schedules by reference to or dependence on the O.R. program in collective bargaining.

Fourth, the Trial Examiner found on substantial evidence that prior to the initiation of the O.R. program, Kroger did disclose certain types of information directly relevant to store-manning which subsequent to the O.R. program it refused to continue to disclose.

Fifth, Kroger concedes that its estimates as to total store employee manhours for a given week are derived at least in part from the O.R. estimates.

Thus, it seems clear to this court, that the O.R. program does have a direct relationship to company scheduling of total employee hours in each individual store.

On the other hand, it also seems clear that the O.R. program covers many facets of managerial concern which are in nowise related to the union's collective bargaining function. This record shows that the O.R. program is neither a time study nor an employee efficiency rating scheme. It appears to be an operating plan for making estimates for the whole of the Kroger marketing operation. As such it covers the effect of advertising, of purchasing, of pricing, of merchandising and of particular types of capital outlay, as well as producing estimates for employee scheduling.

Many of these phases of Kroger's operation are of no direct concern to the union and no need for disclosure of the total O.R. data has been shown. Further, petitioner's claims that its managerial data is of great commercial value and that disclosure would produce competitive damage are not rebutted.

To us the critical problem appears to be how to recognize and how adequately to protect each of the conflicting interests that are involved here. The broad order of the Board does not seem to us to accomplish this at all. At least arguably, under its language, disclosure of every facet of the O.R. plan could be required whether or not the information had any direct relationship to the union's collective bargaining interests.

We recognize that the United States Supreme Court has recently said:

"There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties. Labor Board v. Truitt Mfg. Co., 351 U.S. 149, [76 S.Ct. 753, 100 L.Ed. 1027.] Similarly, the duty to bargain unquestionably extends beyond the period of contract negotiations and applies to labor-management relations during the term of an agreement. NLRB v. C. & C. Plywood Corp., ante, p. 421 [385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486]; Labor Board v. F. W. Woolworth Co., 352 U.S. 938, [77 S.Ct. 261, 1 L. Ed.2d 235.]" NLRB v. Acme Industrial Co., 385 U.S. 432, 435–436, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967).

But it is perhaps significant in this case that the union's showing of need for purposes of collective bargaining is more general and theoretical than immediate and practical.

In General Aniline and Film Corp., 124 N.L.R.B. 1217 (1959), the National Labor Relations Board recognized that:

"An employer is not required to furnish a union with all information

which the union conceives might be helpful in collective bargaining or in the processing of grievances. As recently stated by the Court of Appeals for the District of Columbia in rejecting a union's contention that an employer must furnish on request production and sales information:[6]

"6. International Woodworkers of America, Local Unions 6–7 and 6–122, AFL-CIO v. N. L. R. B., [105 U.S.App.D.C. 37] 263 F.2d 483, 485 (C.A., D.C.), enfg. 118 NLRB 1055.

" 'Wages and hours are the heart and core of the employer-employee relationship, and information concerning existing and past wage rates and patterns is essential to the union to enable it to bargain intelligently. *This is not necessarily so with* * *respect to what the employer's records show about how much, or at what cost, or in what time he produces his goods, and how or at what cost or in what volume he sells those products.* [Emphasis supplied.]"

General Aniline and Film Corp., 124 N.L.R.B. 1217, 1219 (1959).

These are the very contentions presented by The Kroger Co. from this record.

The Hearing Examiner and the Board found that the O.R. program had "a significant and substantial relationship" to the working conditions of employees represented by the union. They cited Fafnir Bearing Co. v. NLRB, 362 F.2d 716 (2d Cir. 1966), and NLRB v. Otis Elevator Co., 208 F.2d 176 (2d Cir. 1953).

■ These two cases relate to situations involving negotiations of piecework rates where time study information is the essence of the dispute. In the instant case the employees in question are on hourly rates. But at least arguably the union's concern with speed-up or safety gives legitimacy to its request for information. And we find no merit to Kroger's argument that such interest had been waived by contract terms.

Although this court has no doubt that there is indeed a significant relationship between the O.R. program and employee working conditions, we do not think this automatically ends the matter. The Supreme Court recognized the need to look at "the circumstances of the particular case" in determining whether or not the statutory obligation to bargain in good faith has been met. NLRB v. Truitt Mfg. Co., 351 U.S. 149, 153–154, 76 S.Ct. 753, 756, 100 L.Ed. 1027 (1956).

In what appears to this court to be a closely related set of circumstances, the Board itself declined a finding of refusal to bargain:

"It is undisputed that during the course of bargaining negotiations the Respondent refused the Union's demand for an unrestricted right to have and to use exact copies of Respondent's job evaluation and job description records for study and analysis outside the confines of the plant. The Respondent conceded that the wage information contained in such records was relevant and necessary to the Union's intelligent performance of its bargaining functions. However, it refused the Union's demand, as made, because these records also contained information regarding certain unique manufacturing techniques and processes utilized by the Respondent in its production operations and its refusal was predicated upon its wish to protect its property rights in the aforementioned techniques and processes. The Respondent openly and honestly made known this position to the Union during the course of the negotiations involved. Nevertheless the Union maintained that it had a right to have the information in the form and manner requested by it.

* This word of the quotation from the NLRB's opinion is corrected to conform to the language used by the Court of Appeals for the District of Columbia Circuit in its opinion in International Wood-workers of America, Local Unions 6–7 and 6–122 v. NLRB, as published in 105 U.S.App.D.C. 37, 263 F.2d 483, 485 (1959).

"We agree with the Trial Examiner that the issue presented to us is a narrow one, i.e., whether the Respondent's refusal in the context of the Union's request for copies of its records for study and analysis outside the plant supported the alleged violation of Section 8(a) (5) and (1) of the Act. We find that it did not." American Cyanamid Co., 129 N.L.R.B. 683, 684 (1960).

 We recognize that Kroger did not in this case seek any intermediate position. But neither was it requested to do so.

Where the union has sought considerably more information than is required for or is relevant to its collective bargaining purposes, and where in fact collective bargaining has been in progress since 1943 with no unresolved grievances or contract disputes, it seems something of a contradiction in terms to find the company guilty of refusing to bargain in good faith by its refusal to disclose the total O.R. program.

We have considered whether or not we should simply modify the Board's order now, so as to eliminate its excessive breadth. Doubtless this course would tend to eliminate some possible future litigation. But to do so would require us to accept the Board's finding that petitioner had violated the law by refusing to bargain collectively. This seems somewhat illogical against a background which includes 1) an undisputed meaningful collective bargaining relationship between this company and this union since 1943; 2) a union request for information which we have held to be considerably broader than the law requires be furnished; 3) a collective bargaining relationship in which the company has not relied upon the O.R. program to deny benefits or refuse to adjust grievances; and 4) a collective bargaining relationship which did not present in this record any pending negotiations or pending unsettled grievances to which the request for information was related.

With all of these factors taken into account, we believe that the Board order should be set aside and its enforcement should be denied because there is not substantial evidence to support the Board's finding of a violation of sections 8(a) (1) and (5). Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Our order and opinion is not to be read as in anywise prejudicial to a future request by this union for the Kroger Co. to furnish the union or its agents reasonable information with respect to any information directly relied on by The Kroger Co. in determining anticipated workloads in the meat departments of its Dayton division and in allocating employee working hours to those departments, whether such information is contained in its O.R. program or not.