866 F.2d 1537
 130 L.R.R.M. (BNA) 2584, 275 U.S.App.D.C. 419
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
DRIVERS, WAREHOUSE & DAIRY EMPLOYEES UNION, LOCAL NO. 75, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
I. Bahcall Steel & Pipe, A Division of I. Bahcall
Industries, Inc., Intervenor.
 No. 88-1354.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 3, 1989.
 
 Before SPOTTSWOOD W. ROBINSON, III, STARR and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on the petition for review of an order of the National Labor Relations Board and was briefed and argued by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that the petition for review is hereby denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15 (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 This petition for review of a decision by the National Labor Relations Board presents several issues arising from the termination of bargaining between I. Bahcall Steel & Pipe (the company) and the certified representative of many of Bahcall's employees, Drivers, Warehouse and Dairy Employees Union, Local No. 75. For the reasons that follow, we conclude that the Administrative Law Judge's opinion, affirmed by the Board, see 287 NLRB No. 139 (Feb. 25, 1988), readily withstands scrutiny.*
 
 
 5
 First, the union alleges that, contrary to the Board's determination, the company engaged in bad faith bargaining in violation of section 8(a)(5) of the NLRA, as defined by section 8(d). 29 U.S.C. Secs. 158(a)(5), 158(d) (1982). It is elementary that the duty to bargain in good faith "does not compel either party to agree to a proposal or require the making of a concession," 29 U.S.C. Sec. 158(d), but in extreme cases rigid adherence to outrageous positions may in the context of the case provide the basis for inferring bad faith. See, e.g., NLRB v. Blevins Popcorn Co., 659 F.2d 1173 (D.C.Cir.1981). The determination of the parties' conduct in the course of negotiations is, of course, peculiarly within the expertise of the expert administrators and dependent upon those administrators' evaluations of the factual claims presented by both sides. See, e.g., NLRB v. Insurance Agents' Int'l Union, 361 U.S. 477 (1960); Sign and Pictorial Union Local 1175 v. NLRB, 419 F.2d 726 (D.C.Cir.1969).
 
 
 6
 In this case, the evidence amply supports the Board's conclusion that the context and nature of the company's bargaining conduct do not support an inference of bad faith bargaining. For example, the company reached agreement with the union on a broad range of measures; it articulated the rationale for its various proposals; and the parties most differed over issues that the company was most keenly interested in pressing--i.e., wages and, to a lesser degree, efficiency measures. Additionally, the company's wage proposals had been accepted by another union; were supported by a survey of prevailing area wage rates; and were accompanied by wage reductions and other impositions upon non-union employees. The Board's conclusion, accordingly, readily passes muster in this respect.
 
 
 7
 Second, the union alleges, contrary to the ALJ and Board's conclusion, that the parties never truly reached impasse; in consequence, the union argues, the company committed an unfair labor practice when it unilaterally imposed many of its proposals affecting conditions of employment. In this arena, a reviewing court will only reluctantly overturn the Board's determination concerning impasse:
 
 
 8
 [I]mpasse is a question of fact involving the Board's presumed expert experience and knowledge of bargaining problems.... But in the whole complex of industrial relations few issues are less suited to appellate judicial appraisal than evaluation of bargaining processes or better suited to the expert experience of a board which deals constantly with such problems.
 
 
 9
 Dallas General Drivers, Warehousemen, and Helpers, Local Union No. 745 v. NLRB, 355 F.2d 842, 844-45 (D.C.Cir.1966).
 
 
 10
 On the whole, the evidence sufficiently supports the ALJ's determination that impasse existed and "that more negotiations would probably not have produced agreement." Joint Appendix [J.A.] at 13. The company made clear to the union that it had placed its "final offer" on the bargaining table. At that juncture, the union made no counter-proposals, but presented the company's offer to the union members for their consideration, thereby precipitating the members' vote to strike. Combined with the parties' history of successful bargaining, the importance of the issues impeding agreement, and the good faith of the parties' bargaining (see supra ), this evidence of the parties' contemporaneous understanding clearly supports the Board's determination that impasse existed. See, e.g., Taft Broadcasting Co., 163 NLRB 475 (1967), review denied, American Fed'n of Television and Radio Artists v. NLRB, 395 F.2d 622 (D.C.Cir.1968).
 
 
 11
 Third, the union alleges that Bahcall committed an unfair labor practice because, contrary to the Board's conclusion, the company had a duty to allow the union access to its books and did not do so. An employer's failure to allow the exclusive representative to examine its records may in certain limited circumstances permit an inference that the company bargained in bad faith. See NLRB v. Truitt Mfg. Co., 351 U.S. 149 (1956). The Board (and company as intervenor) suggest that the union did not independently and sufficiently allege this failure in early charges against the company and that the union negotiators did not with sufficient precision and specificity request access to the company's books. We find it unnecessary to address these threshold objections because, on this record, we are satisfied that the company's course of bargaining gave rise to no duty on the company's part to permit the union to examine its accounts.
 
 
 12
 The duty to allow such access arises when the company during negotiations essentially "pleads poverty" as the reason it cannot accede to the union's demands. While this plea quintessentially arises as a factual claim of inability to pay, and is thus subject to verification, see Truitt, 351 U.S. at 150, 152, a claim of being severely disadvantaged in the marketplace can also, along with specific claims regarding immediate profitability, function as an equivalent statement of inability to pay. See, e.g., United Steelworkers v. NLRB, 401 F.2d 434 (D.C.Cir.1968), cert. denied, Stanley-Artex Windows v. NLRB, 395 U.S. 946 (1969). In the case before us, the testimony of the company's negotiator cited by the union in support of its allegation clearly shows that the company asserted general evaluations of its long-term financial viability rather than factual claims about its immediate ability to pay:
 
 
 13
 I said ... that the company had suffered reversals, that the climate was not good, that there was an economic recession. That the company had been economically adversely impacted. I did not get into the specifics of whether the company was making money or losing money. I said the company wanted to be more viable and stronger. And was attempting to achieve that by bringing wages and fringes into line with what it paid elsewhere and what other companies paid, what it spent for fringes elsewhere in the company, and what the lead, the market place dictated as far as wages were concerned.
 
 
 14
 J.A. at 716 (cited in Reply Brief for Petitioner at 6). This claim is, fairly viewed, simply not a plea of poverty or the equivalent kind of factual claim about internal finances that gives rise to the company's duty to open its books.
 
 
 15
 Finally, the union mounts miscellaneous challenges to the ALJ's opinion. The union asserts that, contrary to the Board's determination, the union unconditionally offered that its striking workers would return to work, an offer the company did not accept. The union's letter states, in relevant part: "[T]he membership of Teamsters Local No. 75 hereby offers, unconditionally, to return to work immediately upon the implementation by the Company of the wages, working conditions, and other terms of employment that were in effect immediately prior to the commencement of Bad Faith Bargaining by the Company." J.A. at 333. The union also takes exception to the Board's conclusion that Joseph Delveaux, a consultant to Bahcall, was not a supervisor. After reviewing the record, we find these two challenges to be without merit.
 
 
 16
 An appropriate order will issue accordingly.
 
 
 
 *
 The parties differ over the applicable standard of review. The union argues that this court should overturn the Board's determination if no substantial evidence supports the Board's decision. The Board contends that its decision is reviewable only to determine whether no rational basis supports its decision. In our view, the Board's decision must be sustained under either of the competing standards