908 F.2d 966
 134 L.R.R.M. (BNA) 2672
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 GAS SPRING COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America, UAW,
and its Local Union NO. 1612, Intervenor.
 
 No. 89-2448.
 United States Court of Appeals, Fourth Circuit.
 Argued April 5, 1990.
Decided July 16, 1990.
Rehearing and Rehearing In Banc Denied Aug. 21, 1990.
 Thomas Guy Greaves, III, Haynsworth, Baldwin, Johnson and Greaves, P.A., Greenville, S.C. (argued), for petitioner; Vereen A. Dennis, Haynsworth, Baldwin, Johnson and Greaves, P.A., Greenville, S.C., on brief.
 William Allen Baudler, National Labor Relations Board, Washington, D.C. (argued), for respondent; Jerry M. Hunter, General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Charles Donnelly, Supervisory Attorney, National Labor Relations Board, Washington, D.C., on brief.
 Richard H. Markowitz, William T. Josem, Markowitz & Richman, Philadelphia, Pa., for intervenor.
 N.L.R.B.
 AFFIRMED.
 Before CHAPMAN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 On this appeal, the appellant-employer seeks reversal of the National Labor Relations Board's finding of unfair labor practices arising from collective bargaining negotiations between the employer and the union in June 1986. The Board found that, in the course of the negotiations, the employer pleaded financial inability to meet the union's bargaining demands. In light of this finding, the Board held that the employer's subsequent refusal to open its books to inspection by the union constituted a failure to bargain in good faith. The Board further held that the ensuing strike was motivated by the employer's failure to bargain in good faith and therefore qualified as an unfair labor practice strike with the result that the employer's refusal to reinstate striking employees on request also constituted an unfair labor practice. Our review of the record reveals that these findings are supported by substantial evidence and there was no error by the Board. We therefore enforce its ruling.
 
 I.
 
 2
 This dispute arose between the employer, Gas Spring Company, and the union, the International Union of United Automobile, Aerospace and Agricultural Implement Workers of America, Local 1612, during negotiation of the collective bargaining agreement covering the employer's plant in Colmar, Pennsylvania. The union has served as the exclusive bargaining agent for the employer's Colmar employees since 1973. When these negotiations began, the employees had been covered by an agreement that had been in effect for three years and was to expire June 30, 1986.
 
 
 3
 In early June 1986, the union and the employer began negotiating to form a new agreement. During the bargaining, the employer made numerous demands for reductions in a wide variety of employment benefits. Although it repeatedly claimed that its demands were not motivated by financial necessity, the employer asserted that, given its economic situation, it was unwilling to provide employees with any increase in benefits. Indeed, the employer stated that it required financial concessions from the employees or jobs would be lost. In response to the employer's position, the union asked to examine the employer's financial records to confirm that the employer was unable to grant the increases that the union sought. The union stated that, if the employer was truly unable to afford increased benefits, the union would agree to some reductions. Before granting any concessions, however, the union insisted on examining the employer's books. Throughout the bargaining process, the employer maintained the position that its demands for concessions were not motivated by financial necessity and it refused to open its books to the union's examination.
 
 
 4
 After several sessions of largely fruitless bargaining, the union presented the employer's final proposal to the employees. This proposal provided for no wage increase and a reduction in employee benefits. The record shows that, during the discussion of the proposal, the employees expressed dissatisfaction both with the reduction in benefits and with the employer's refusal to provide financial information to support these reductions. On July 1, 1986, the employees voted to strike, and thereafter the union filed an unfair labor practice charge because of the employer's refusal to substantiate its claim of inability to pay increased benefits. On October 6, 1986, the union made an unconditional offer to return to work on behalf of all employees who had not already done so. At that time, the employer informed the union that it considered the striking employees to be economic strikers. The employer placed these strikers on a preferential hiring list, but it did not offer them immediate employment after receiving their offer to return to work.
 
 
 5
 After the hearing on the union's charge, an ALJ found that the employer's refusal to pay increased benefits had been based on a plea of financial inability, and held that, by refusing to open its financial records in response to the union's request, the employer had failed to bargain in good faith in violation of sections 8(a)(5) and (1) of the NLRA, 29 U.S.C. Secs. 158(a)(5), (1). The ALJ further held that the employer's refusal to reinstate the striking employees, after their unconditional offer to return to work, violated sections 8(a)(3) and (1) of the Act, 29 U.S.C. Secs. 158(a)(3), (1). A three-member panel of the NLRB affirmed the ALJ and the employer has petitioned this court for review.
 
 II.
 
 6
 The employer's appeal raises two issues. The first is whether the employer invoked financial difficulties as the reason for its refusal to grant any increased benefits during collective bargaining. If this question is answered in the affirmative, the employer's refusal to disclose financial information was an unfair labor practice, and we proceed to the second issue: were the striking employees economic strikers or unfair labor practice strikers?
 
 A.
 
 7
 Under the Supreme Court's decision in NLRB v. Truitt Mfg. Co., 351 U.S. 149, 152 (1956), an employer who claims financial inability to meet a union's bargaining demands incurs a duty to satisfy any questions that the union may have regarding the employer's finances by disclosing the appropriate financial information. The Court stated that, if an argument "is important enough to present in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy." Id. at 152-53. However, if an employer takes the position that it is unwilling, rather than unable, to meet a union's demands, no duty to disclose arises because the policies underlying Truitt are not implicated: the employer is making no claim of financial distress that needs to be confirmed.
 
 
 8
 The question of whether an employer has claimed financial inability as a justification for its bargaining demands is inherently factual. Therefore, we subject the Board's findings on such an issue to the substantial evidence test. We must enforce the Board's ruling if we conclude that its findings are supported by substantial evidence in the record, considered as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Proctor & Gamble Mfg. Co. v. NLRB, 658 F.2d 968, 977 (4th Cir.1981). Any inferences that the Board has drawn from the facts need only be reasonable. They need not be the inferences that we would have reached if the record were before us for de novo review. NLRB v. United Ins. Co., 390 U.S. 254, 260 (1968); Universal Camera Corp., 340 U.S. at 488.
 
 
 9
 None of the employer's arguments is sufficient to warrant a reversal of the Board's finding that, during bargaining, the employer claimed financial inability to meet the union's demands. In support of its position, the employer relies heavily on a number of minor factual inconsistencies in a record which, according to the ALJ who heard the evidence, was fraught with internal contradiction. These inconsistencies, however, are minor, and the ALJ's thorough opinion extensively documents the credibility determinations that he made as well as revealing the other means he used to resolve the myriad discrepancies in the record. Although the ALJ resolved a number of these evidentiary conflicts adverse to the employer, our review discloses no instance in which the resolution lacks the support of substantial evidence in the record.
 
 
 10
 The employer also contends that the ALJ gave inadequate weight to the employer's assertions during negotiations that its bargaining posture was not based on financial inability to pay increased benefits, but was instead attributable to "prudent business considerations." To merely state this argument is to immediately point up why it must fail. As the component of the administrative process charged with making factual determinations, the ALJ conducting a hearing on an unfair labor practice charge is uniquely capable of weighing the evidence with an accuracy which no other tribunal, reviewing the proceeding on a cold record, can approach. See, e.g., NLRB v. Jarm Enters., Inc., 785 F.2d 195, 203 (7th Cir.1986) (it is "not the role of an appellate court" to "reevaluate the credence and weight that should be given to testimonial evidence of whether or not [the employer] claimed an inability to pay"). It would represent a gross invasion of the province of the Board and the hearing officer for this court to make the minute distinctions in the weight of the evidence that the employer suggests. This consideration alone would justify the rejection of the employer's argument, but the employer's position is completely eroded by the prevalence in the record of its references to its worsening financial condition, its claims that it was "heading into the red," and its forecasts of the loss of jobs. There was certainly substantial evidence on which the Board could have concluded that the employer's bargaining position was a claim of financial inability to pay and not an assertion of "prudent financial considerations."*
 
 B.
 
 11
 The striking employees qualified as unfair labor practice strikers if the employer's refusal to open its books contributed to the employees' decision to strike. As unfair labor practice strikers, the employees were entitled to immediate reinstatement on request and the employer's refusal to grant it constituted a separate unfair labor practice. The question then becomes, did the employer's unfair labor practice motivate the strike to an extent that it may properly be considered to be an unfair labor practice strike?
 
 
 12
 On this issue, the employer argues for a very restrictive test for strike causation. It claims that there must be a close and direct causal relationship between the unfair labor practice and the decision to strike before there exists an unfair labor practice strike. Essentially, the employer argues that the relevant decisions hold that an unfair labor practice strike exists only when, but for the employer's unfair labor practices, the strike would not have occurred. Our reading of the governing precedent is different.
 
 
 13
 Under the law of this circuit, in order for a strike to qualify as an unfair labor practice strike, the employer's unfair labor practice must only be one of the factors contributing to the decision to strike. "[W]here the causes contributing to a strike consist of unfair labor practices and employees' desires for wage betterments, the latter should not excuse the employer from the legal consequences that flow from its conduct which transcends the permissible bounds under the National Labor Relations Act." Northern Va. Steel Corp. v. NLRB, 300 F.2d 168, 174 (4th Cir.1962) (quoting Berkshire Knitting Mills v. NLRB, 139 F.2d 134, 137 (3d Cir.1943)); see also NLRB v. Stilley Plywood Co., 199 F.2d 319, 320 (4th Cir.1952) (upholding finding of unfair labor practice strike "where unfair labor practices are a factor in bringing about a strike"); cf. NLRB v. Safway Steel Scaffolds Co. of Ga., 383 F.2d 273, 280 (5th Cir.1967), cert. denied, 390 U.S. 955 (1968) (strike qualifies as an unfair labor practice strike "if an unfair labor practice had anything to do with causing it"). Nor is it necessary that the union expressly advert to the employer's unfair labor practice of refusing to disclose financial information in reaching its strike decision. See Jarm Enters. Inc., 785 F.2d at 204.
 
 
 14
 Under this standard, the Board's conclusion that the striking employees were unfair labor practice strikers certainly has the support of substantial evidence in the record. Although there is conflicting testimony on the question, there is evidence that, on the date of the strike vote, union leaders explained to the employees that the union negotiators had requested the employer to open its books to substantiate its claimed financial difficulties. There was also evidence that upon learning that the company had refused to disclose any financial information, several employees at the union meeting questioned the union leaders about the employer's refusal and expressed their disbelief that the apparently profitable employer was experiencing the financial difficulties it claimed.
 
 
 15
 Here, as before, the employer is quibbling about the minor inconsistencies in the record. The presence of contradictory testimony does not change the fact that the record contains substantial evidence from which the Board could have properly found that the employer's refusal to produce its financial information was a contributing cause of the strike. The Board was therefore without error in its treatment of the striking employees as unfair labor practice strikers.
 
 III.
 
 16
 For the reasons set forth above, we affirm the Board's findings of fact and conclusions of law, and we grant enforcement of the Board's order.
 
 
 17
 IT IS SO ORDERED.
 
 
 
 *
 In a final effort to avoid the consequences of its actions, the employer argues that, even if it did plead financial inability to grant concessions, its refusal to disclose financial information was justified because the union had threatened to attempt to harm the employer's relations with its customers and the possession of the financial information could have facilitated such harm. When the employer made this argument at the hearing, the ALJ recognized it for the afterthought that it was. The employer failed to raise these concerns of confidentiality until well after the strike had begun and the union had filed its unfair labor practice charge. It seems, therefore, highly unlikely that such concerns truly motivated the employer's pre-strike refusal to release the requested information