**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**A. S. ABELL COMPANY, Respondent,**

**Washington-Baltimore Newspaper Guild, Local 35, Intervenor.**

No. 77–2214.

United States Court of Appeals, Fourth Circuit.

Argued July 11, 1979.

Decided July 2, 1980.

---

Vivian A. Miller, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief), for petitioner.

Robert E. Paul, Arlington, Va. (Spelman, Eisenberg, Paul & Wagner, Arlington, Va., on brief), for intervenor.

N. Peter Lareau, Baltimore, Md. (Venable, Baetjer & Howard, Baltimore, Md., on brief), for respondent.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

The A. S. Abell Company, respondent (hereinafter the Company) publishes the Sun newspapers in Baltimore. The Company has collective bargaining agreements with seven unions, each covering an identified category of employees. The Newspaper Web Pressmen's Local Union No. 31 represents the pressmen, employees with special skills who run the presses to print the newspapers. The Newspaper Guild represents a diverse group of employees which embraces both highly skilled and lesser skilled workers, including categories such as editorial, commercial, and maintenance men, but does not include any mechanical employees.

The Company and Pressmen's Local 31 were negotiating, during calendar year 1975, for a new collective bargaining agreement. In early 1975, the Company sent some members of the Guild to a school in Oklahoma to learn how to operate the presses. The Guild requested the names of those individuals who normally perform work within Guild jurisdiction who had

been so cross-trained in the operation of the presses. The Company provided the information on June 2, 1975.[1] On June 3 the Guild posted throughout the Company's premises a bulletin which identified those cross-trained employees by name and labeled them "scabs." The same bulletin named some supervisory employees (not Guild members) who had also been trained to operate the presses and also labeled these individuals "scabs." The Guild made no other use of the information the Company had provided.[2]

In November 1975 the Guild learned that a second group of Guild-represented employees had been cross-trained to operate the presses. By letter dated November 20, 1975, the Guild requested certain information from the Company concerning these employees:

J. Stephen Becker
Vice President and
    Business Manager
The A. S. Abell Company
Calvert and Centre Streets
Baltimore, Maryland 21203
Dear Steve:

It has come to my attention that the A. S. Abell Company has sought and succeeded in convincing some employees in Guild jurisdiction of the need (by the Sunpapers) for their cross training in the specialties normally performed in traditional mechanical union jurisdiction.

Such conduct, of course, could involve serious conflict with many portions of the collective bargaining agreement between the Guild and the A. S. Abell Company. The Guild feels that it must have all information relevant and reasonably necessary to the proper execution of our obligation to fully and fairly represent all employees in Guild jurisdiction.

---

1. The Company initially refused to furnish the information, and complied with the Guild's request only after the Guild had filed charges with the Board.

2. The Administrative Law Judge rejected, on the ground of remoteness, apparently relevancy, an offer of proof that the wife of an employee who had been cross-trained received an anonymous telephone call in which the caller

threatened to burn down her house, kill the employee, and the wife and children. A further part of the offer of proof rejected was that that particular employee's car received extensive damage on June 3, 1975, the same day the Guild published the names of the cross-trained employees, and the day following the disclosure of the names to the Guild.

In order to determine whether or not there is a basis for any complaint on behalf of the union or any under its jurisdiction I am requesting the following information be furnished in writing as soon as is possible.

1. The name, job classification and department of all persons in Guild jurisdiction who have been cross trained in mechanical union specialties.
2. The time period occupied by such training, the place of such training, the hours devoted to such training and the amount of compensation for such hours.
3. The amount paid to each person for transportation, lodging and all incidental expenses.
4. The contemplated use or purpose for such training.
5. What amount of additional compensation is being contemplated for persons who are cross trained in another specialty when they perform that specialty?
6. Were these assignments made on a voluntary basis or were such persons directed to assume new duties and learn skills common to the jurisdiction of other unions at the A. S. Abell Company?
7. Will the A. S. Abell Company invoke any disciplinary action against any in Guild jurisdiction who refuse to participate in the training in other jurisdictions or who refuse to perform work in other unions' jurisdiction?

Again, I want to make it clear that the Guild feels that the above information is vital to our obligation to represent employees in Guild jurisdiction and to determine whether or not there is any basis for employee complaints. I urge an immediate response to this request.

Sincerely,

Brian L. Flores
Administrative Officer

The Guild filed a charge with the National Labor Relations Board on December 10, 1975, alleging that the Company had violated Section 8(a)(1) and (5) of the National Labor Relations Act by refusing to provide the requested information. By letter dated December 15, 1975, the Company declined to provide the information unless the Guild demonstrated its relevancy to collective bargaining: [3]

Mr. Brian L. Flores
Administrative Officer
Washington-Baltimore Newspaper Guild
3408 Wisconsin Avenue, N. W. (Room 210)
Washington, D. C. 20016

Dear Mr. Flores:

I am in receipt of your letter dated November 20, 1975 requesting certain information concerning employees represented by the Guild who, in your words, are being "cross trained" in work normally performed by employees represented by other labor organizations. While the Company does not feel that the information you have requested is relevant to collective bargaining, let me assure you that they have been correctly and properly compensated.

I must respectfully decline to provide you with any further information until such time as you are able to demonstrate the relevancy for purposes of collective bargaining.

Very truly yours,
A. S. ABELL COMPANY
J. Stephen Becker
Business Manager

On that same day (12/15/75), the NLRB notified the Company of the charge filed by the Guild.

The Guild posted a bulletin on January 1, 1976, which contained the following paragraph:

Incidently [sic], the NLRB has yet to act on the Guild's complaint against the

3. On February 24, 1976, the Company answered five of the seven questions and said that any attempt to answer the other two (questions five and seven) would be purely speculative and conjectural and therefore irrelevant to the stated purpose of the request. Assuming the Company's response to have been complete as to relevant questions, although not acknowledging the right of the union to the information, the Board does not and did not treat the controversy as moot. *U. S. Gypsum Company*, 200 NLRB 305 (1972).

Company for refusing to give us the names of those employees in Guild jurisdiction trained at the Oklahoma scab school to do the work of Pressmen.

The Administrative Law Judge, after a hearing, issued his decision recommending that the complaint be dismissed. The Board, over a vigorous dissent, found that the Company had violated the Act by refusing to provide the information which the Guild requested in November 1975, and ordered the Company to furnish the Guild with the requested information. This case is before us upon the application of the NLRB for enforcement of its order. We deny enforcement.

■ Like the facts, the basic principles of law applicable here are not in dispute. The Company has a duty to bargain collectively, which includes a duty to provide relevant information needed by the Guild for the proper performance of its duties as the employees' bargaining representative. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (U.S.1979); *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 435–6, 87 S.Ct. 565, 567–568, 17 L.Ed.2d 495 (1967). An employer is obligated to provide only that information which is relevant to bargainable issues. Wage and related information pertaining to employees in the bargaining unit is presumptively relevant, and for such information the employer bears the burden of showing a lack of relevance. However, even for such presumptively relevant information, a union is required to show the precise relevance of it if effective employer rebuttal comes forth. *Id.* Where a union seeks information about employees outside the bargaining unit, the union bears the burden of showing that the information is relevant to bargainable issues. *NLRB v. Rockwell-Standard Corp.*, 410 F.2d 953, 957 (6th Cir. 1960); see *Curtiss-Wright Corporation, Wright Aeronauti-*

*cal Division v. NLRB*, 347 F.2d 61, 68–69 (3d Cir. 1965).

■ The Administrative Law Judge[4] determined that a bargaining unit is described in terms of jobs or work classifications, rather than in terms of the particular individuals who fill those classifications. In his opinion a union is therefore entitled to the presumption of relevance only where it demands information directly related to unit work done by employees in the bargaining unit. In the instant case, the requested information was not directly related to Guild unit work. The ALJ therefore concluded that the Guild was not entitled to information about the training for pressmen's work because that work is squarely within the jurisdiction of the Pressmen's Local. If both the Guild and the Pressmen's Local are entitled to discuss the question with the Company, the ALJ argues, then the entire concept of exclusive representation as bargaining agent becomes a mockery.

A 2 to 1 majority of the Board reached the opposite conclusion. After pointing out that the exclusive bargaining agent represents employees with respect to wages, hours, and other terms and conditions of employment, the majority opinion stated that such terms and conditions cover much more than the particular job tasks performed by individuals in the unit. The Board was satisfied that the information requested by the Guild was within the category of "wage and related information pertaining to unit employees," and that the information was related to one or more existing contract provisions.

The dissenting Board member disagreed not only with the majority's analysis, but also with that of the ALJ. The dissent looked not only at the nature of the information sought but also at the purpose underlying the Guild's request, and concluded that since the Guild did not need or intend to use the information for proper perform-

---

4. No special significance attaches to the Administrative Law Judge's findings where, as here, the ALJ and the Board reach different legal conclusions based on the same facts.

While we review the Board's decision, the ALJ's decision is a part of the record. *Winn-Dixie Stores, Inc. v. NLRB*, 448 F.2d 8 (4th Cir. 1971).

ance of its duties, the Company was not obligated to provide it.

■ We need not decide the issue of whether or not the requested information was within the category of "wage and related information pertaining to employees in the bargaining unit" and was therefore entitled to the presumption of relevancy. Assuming for the sake of argument that the information was presumptively relevant, the Company has effectively rebutted that presumption by showing the union's prior misuse of similar information. When given similar information in June, only five months prior to the request in this case, the Guild did not bargain with respect to it, and neither did it prosecute a grievance. It did, however, use the information to insult the employees involved. Absent the benefit of a presumption, the Guild's failure to demonstrate the relevance of the information sought indicates that it is not entitled to the information.

■ When the Company provided the Guild with the names of the first group of cross-trained employees in June, the Guild posted bulletins labeling the individuals "scabs." The Board argues that it is irrelevant that the Guild did not use that information properly, i. e., in subsequent negotiations or grievance proceedings. It takes the position, indeed, that the evidence of the misuse of the information furnished in June is irrelevant. However, the conduct of the parties, including antecedent events, must be examined. *NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956), addressed an employer's refusal to provide financial data requested by a union. The Court said there that "[e]ach case must turn upon its particular facts. The inquiry must always be whether or not under the circumstances of the particular case the statutory obligation to bargain in good faith has been met." *Id.* at 153–54, 76 S.Ct. at 756. We think that evidence of prior use or misuse of similar information by the Guild is quite relevant in determining whether the Company was bargaining in good faith.

Prior harassment of employees has been held to justify an employer's subsequent refusal to provide payroll information on replacement workers. In *Sign and Pictorial Union v. NLRB*, 419 F.2d 726 (D.C.Cir. 1969), strike replacements had been harassed, threatened, and assaulted by striking employees in the presence of a union representative. The union claimed that the Company paid the strike replacements more than the striking employees had been paid, and wanted to see the payroll records. The Company refused to provide the information, absent assurances it would not be used to facilitate harassment of the strike replacements. The Board found that the Company had not refused to bargain in good faith. The court denied the union's petition for review, saying "there may be circumstances justifying an employer's refusal to furnish such information." *Id.* at 738.

The trial examiner in *Shell Oil Co. v. NLRB*, 457 F.2d 615 (9th Cir. 1972), found that a legitimate fear of harassment justified the Company's refusal to provide the names and addresses of unit employees. The union requested that information some ten months after the end of the strike during which employees who returned to work had been harassed. The Company offered to give the names to an independent mailing service or to provide the names of consenting employees. Nevertheless, the Board held that the Company had refused to bargain in good faith. The court, however, said that even a refusal to provide relevant information is not per se an unlawful refusal to bargain. The crucial factor was said to be a likelihood of a clear and present danger to the employees. Based on the past harassment, the court denied enforcement because there was a clear and present danger of harassment which justified the Company's refusal to provide the information. The Supreme Court cited *Shell Oil Co.*, with approval, in *Detroit Edison Co.*, supra, at n. 14, to show that union interests in relevant information do not always predominate over other interests. The Court described *Shell Oil Co.* as a situation where a "well-founded fear that non-

striking employees would be harassed" justified the refusal to supply employee names. *Id.*

Other cases have implicitly or expressly recognized that a genuine fear of harassment may, in circumstances not present in those cases, justify a company's refusal to provide information. See *NLRB v. Custom Excavating, Inc.*, 575 F.2d 102 (7th Cir. 1978) (claims of harassment and slander were speculative and unsubstantiated); *NLRB v. Pearl Bookbinding Co., Inc.*, 517 F.2d 1108 (1st Cir. 1975) (no good faith fear of violence or harassment); *United Aircraft v. NLRB*, 434 F.2d 1198 (2d Cir. 1970), cert. den., 401 U.S. 993, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971) (no likelihood of a clear and present danger because the prior harassment occurred ten years earlier and there was no evidence of harassment since). Our holding is consistent with them.

Like the case now before us, *San Diego Newspaper Guild v. NLRB*, 548 F.2d 863 (9th Cir. 1977), centered on a union's request for information regarding a shadow labor force trained to take over in the event of a strike. The trainees there, however, were not otherwise employed by the company. In our case, the requested information pertains to bargaining unit members who were trained to do non-unit work. In *San Diego Newspaper Guild*, non-unit members were trained to do unit (Guild) work. The Board found that there was no presumptive relevance because the trainees were not bargaining unit members, and since the union had not demonstrated the relevance of the information sought, denied the Guild's petition for review. The court emphasized that the information sought must be "relevant to bargainable issues," p. 868, and held, reciting Board agreement, that an employer need not bargain over its decision to use strike replacements and other defensive economic weapons. 548 F.2d at 868, esp. n. 9.

■ Relevancy in cases should be determined under a "discovery-type standard" where the courts "of necessity must follow a more liberal standard as to relevancy." See *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 437, 87 S.Ct. 565, 569, 17 L.Ed.2d 495 (1967). On the other hand, "A union's bare assertion that it needs information to process a grievance does not automatically oblige the employer to supply all the information in the manner requested." *Detroit Edison Co.*, supra, 440 U.S. at 314, 99 S.Ct. at 1131. The union's showing of relevance ". . . must be more than a mere concoction of some general theory which explains how the information would be useful to the union in determining if the employer has committed some unknown contract violation. To hold otherwise would be to give the union unlimited access to any and all data which the employer has. Conversely, however, to require an initial, burdensome showing by the union before it can gain access to information which is necessary for it to determine if a violation has occurred defeats the very purpose of the 'liberal discovery standard' of relevance which is to be used. Balancing these two conflicting propositions, the solution is to require some initial, but not overwhelming, demonstration by the union that some violation is or has been taking place."

*San Diego Newspaper Guild*, supra, 548 F.2d at 868–69. The information must be relevant to some bargainable issue, and, as we have stated, an employer need not bargain over its decision to train or use strike replacements or other defensive economic weapons. *San Diego Newspaper Guild*, supra; *Hawaii Meat Company v. NLRB*, 321 F.2d 397 (9th Cir. 1963). So the fact of the training of replacements alone will not suffice to supply relevancy.

Although under the circumstances of this case the Guild is not entitled to a presumption of relevancy, because any such presumption has been rebutted, it might yet have been entitled to the information sought if it had demonstrated that the information sought was relevant to the proper performance of its duties as the employees' bargaining representative.

The Guild's letter of November 20, 1975 claimed that the cross-training "could involve serious conflict with many portions of the collective bargaining agreement," and that the information is needed to determine

"whether or not there is any basis for employee complaints." The Guild did not explain what portions of the collective bargaining agreement might be involved, or what the conflicts might be, or what the employee complaints might be. The record discloses no use of the previously given information in either collective bargaining or processing grievances, only that it was misused in the bulletins referred to above. The Guild presented nothing more than a "bare assertion" that it needed the information. Only recently, in *S&W Motor Lines v. NLRB*, 621 F.2d 598 (4th Cir. 1980), we held that there was no unfair labor practice in refusing to supply to a union names and addresses of non-unit members, to which of course the presumption of relevancy did not apply, because of the "absence of a showing that . . . [the union] made any demonstration to the employer of a need to know," p. 603.

■ Since any presumption of relevancy with respect to the sought for information was rebutted and the Guild gave no indica-

tion of how it might be relevant, the Company was not required to supply the information.[5]

*ENFORCEMENT DENIED.*

---

**5.** , The guild requested the names of the first group of cross-trained employees in April or May 1975. After the Guild filed an unfair labor practice charge, but before the same was heard, the Company provided that information on June 2, during a negotiating meeting with the Guild. During this time period, the Company and the Guild were negotiating for a new contract, which was signed one month later, on July 1, 1975. Thus, the Guild clearly had an opportunity to use the information for collective bargaining purposes. However, as the dissenting member of the Board correctly recognizes, the record is devoid of any evidence that, during this period or at any other time, the Guild even attempted to use the information for collective bargaining, to process a grievance, or for any other legitimate purpose. The majority of the Board does not dispute these facts; rather, it considers these events to be irrelevant.

As for the second request, the Company declined to provide the information "until" the Guild demonstrated its relevance. The Guild never responded to the Company or attempted to demonstrate relevancy. Rather, the Guild merely posted another bulletin referring to scabs and filed an unfair labor practice charge. It is not controlling that the Guild finally may have demonstrated a need to know at the administrative hearing, and that the Board now points out ways in which the information may be relevant. The point is that the Guild did not make "any demonstration to the employer of a need to know," *S&W Motor Lines, Inc. v.*

*NLRB*, 621 F.2d 591 (4th Cir. May 1, 1980), although presented the opportunity so to do by the Company.

Since the Board does not treat the question as moot, and seeks a conviction of the Company for a refusal to bargain, although the information sought, at least arguably, has been furnished, we deal with the fact situation presented to the Company at the time it acted. At the time of its refusal to furnish the names, etc., to the Union, reasons later given by the Union and the Board to support the relevancy of the information were not brought to its attention. Reasons not brought to the attention of the Company at the time but later used to justify positions in administrative hearings should not be used to convict the Company of an unfair labor practice when these reasons were not brought to its attention contemporaneously, they being not apparent from the face of the request. Absent any showing of relevancy by the Union, especially with an outstanding request so to do, we do not think that a conviction of refusal to bargain should stand in this case when there is no doubt that no proper use had been made of the same information furnished in the past to the same Union which was then negotiating its own contract, the only use of the previous information having been improper and having served no collective bargaining purpose. The request of the Company that relevancy be demonstrated we think was reasonable.