**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ST. JOSEPH'S HOSPITAL, Respondent.**

No. 303, Docket 84–4085.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1984.

Decided Feb. 14, 1985.

Deborah M.P. Yaffe, Washington, D.C. (Wilford W. Johansen, Acting Gen. Counsel, John E. Higgins, Jr., Deputy Gen.

Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John G. Elligers, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Susan S. Robfogel, Rochester, N.Y. (Mary J. Harrington, Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y., of counsel), for respondent.

Jeffrey Dana Gillen, Albany, N.Y. (Harder, Silber & Gillen, Albany, N.Y., of counsel), for intervenor, N.Y. State Nurses Ass'n.

Before FRIENDLY, PIERCE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge.

The issue before us is whether an employer committed an unfair labor practice by establishing certain qualifications for the union's auditor who was to examine the employer's financial records to verify its claimed inability to pay a wage increase when 1) the qualifications were apparently reasonably related to the problem of the audit, 2) the employer indicated its willingness to discuss the qualifications, and 3) the union refused to negotiate the qualifications and raised no specific objection to any of them.

For the reasons below, we conclude that the employer did not engage in an unfair labor practice, and deny enforcement of the NLRB order.

## BACKGROUND

There is no dispute over the facts. St. Joseph's is a voluntary not-for-profit hospital located in Elmira, New York. Under the New York State reimbursement system and cost containment regulations for hospitals, 100% of its income is controlled by the state.

As the representative since 1972 for approximately 200 of St. Joseph's nurses, the New York State Nurses Association (the "union") had entered into several collective bargaining agreements with the hospital. With an agreement due to expire on December 31, 1982, the parties commenced

negotiations for a successor agreement on November 2, 1982. During the second negotiating session, on November 12, the hospital asserted that new revenue caps imposed by New York State on its reimbursement funds, combined with other financial developments, had rendered the hospital unable to offer registered nurses any pay increase. The hospital offered, however, to permit a "mutually acceptable qualified CPA" to review its financial records to verify the claim.

The following day the hospital sent a letter to the union confirming its willingness to allow an auditor who was a certified public accountant (CPA) to review the financial records, but elaborated that

[t]he following criteria must be met for the selected CPA to be acceptable to the hospital:

1. Must be a member of AICPA.
2. Must be a member of the New York State Society of CPA's.
3. Must be a participating CPA in New York State with the following qualifications:

   a. A minimum of five years audit experience at the management level

   b. A minimum of two of the preceding five years with management audit engagement responsibilities for voluntary community hospitals in New York State with at least 150 beds

   c. Demonstrated knowledge of the New York State Hospital Reimbursement Regulations during the period 1978–1982

   d. Demonstrated knowledge of the Lombardi legislation (S526–D; A7303–B) and how rates will be kept calculated

   e. References of hospital clients[.]

The hospital stressed that it was "imperative that the CPA retained to perform this function for [the union] have demonstrated knowledge of the New York State Reimbursement System."

Without acknowledging the hospital's letter, the union on November 17 requested that the hospital either send certain finan-

cial records and information to an auditor designated by the union, William Odendahl, or have it available for his review on December 10. Although the union letter indicated that Odendahl was a CPA, it did not suggest that he met any of the additional criteria proposed by the hospital, or that he had any other relevant qualifications.

In its November 24 response the hospital stated that its records would be available for review on or before December 10, but reiterated that it would expect to receive "proof that Mr. Odendahl [met] the criteria spelled out in [the November 13] letter prior to his arrival", and requested immediate notification if the union disagreed with the reasonableness of any of the criteria.

One week later the union cancelled the bargaining session scheduled for December 8 and 9 "[i]n the absence of an auditor's report." Without responding to the hospital's concerns or attempting to document Odendahl's qualifications, the union asserted that he was "eminently qualified and fully authorized to act" as the union's agent. The union took the position that any questions about his analysis of pertinent data could be discussed upon completion of his work.

Still seeking evidence of Odendahl's qualifications, the hospital requested the information on December 6, first by phone and then by confirming mailgram. The hospital stressed that it remained willing to discuss any of the criteria the union found unreasonable and, in an effort to be "helpful", suggested that "any of the 'Big Eight' national accounting firms would be acceptable."

In the absence of any response by the union, the hospital sent another letter on December 17, urging the union to schedule some bargaining sessions in view of the pending expiration of the existing agreement. On that same day the union filed an unfair labor practice charge with the National Labor Relations Board. Three weeks later the NLRB issued a complaint against the hospital alleging that the hospital had refused to bargain collectively with the union in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act, by placing unreasonable restrictions on access to information sought by the union.

At a third meeting between the parties on January 17, the hospital expressed its concern that an accountant unfamiliar with the complicated methodologies of the New York State reimbursement system might deliver a misleading report which could tend to produce "serious employee relations problems because of misunderstandings." Nevertheless, the union refused to discuss the criteria, asserted that all of the hospital's criteria were unreasonable, and insisted that it had the right to send in "anyone" it chose.

On January 28 the hospital reiterated that it was "willing and anxious to discuss or negotiate" any of the specific criteria that were unacceptable to the union. A month and a half later the union responded, but merely asserted, and still without factual support, that Odendahl had "demonstrated professional experience and competence in auditing the financial records of a not-for-profit voluntary hospital". It did not identify the hospital. The union reasserted that whatever the outcome of this audit, the hospital would be able to challenge Odendahl's findings after they were completed.

With the hope of clarifying the criteria set forth in the November 13 letter, the hospital proposed on April 21 that

[t]o satisfy the Hospital's legitimate demand that the CPA selected be someone with demonstrated expertise in New York State reimbursement, he should be able to advise the Hospital of

(1) how he derived his knowledge of Medicare, Medicaid and charge control as they apply in New York State; (2) what his experience is in analyzing financial statements in the health care industry; and (3) The New York State health care providers for whom he has provided professional services, the dates of the services performed, and the scope of the services.

The hospital added that it was asking only that the CPA be someone who could understand the financial problems created by the state reimbursement mechanisms and stated that "[a]ny criteria set forth in [the November 13 letter] that could be construed as making additional demands may be disregarded." The union did not respond.

Despite the apparent standoff on who should audit the records, the parties continued to negotiate the underlying wage issues. Then, in early May 1983, the hospital informed the union that its economic situation appeared to be changing and that it would be able to offer a prospective wage increase. Despite this change in conditions that eliminated the need for a union auditor, Administrative Law Judge Winifred D. Morio held a hearing on the union's charges on May 26, 1983.

In July 1983, after the hearing was concluded, the parties entered into a new collective bargaining agreement. Nevertheless, Judge Morio issued a Decision and Recommended Order in September 1983 in which she found that the hospital had refused to bargain in good faith with the union and ordered the hospital to permit the union's representative to examine its financial records.

Upon review by the NLRB, the hospital claimed that since the parties had reached agreement, the entire issue was moot and the information sought by the union was no longer relevant for bargaining. In response, the union argued that the order should be affirmed since the union would have the same problem when negotiations commenced for a new collective bargaining agreement.

The board affirmed the ALJ's findings and conclusions of law and issued an order requiring the hospital to cease and desist from refusing to bargain in good faith, and to furnish the union with financial records and information relevant to the claimed inability to pay a wage increase. The board then petitioned this court for enforcement of its order.

## DISCUSSION

In determining whether the hospital's actions constitute a failure to bargain in good faith, the scope of our review is somewhat limited. Although findings of the board with respect to questions of fact shall be conclusive if supported by substantial evidence on the record as a whole, 29 U.S.C. § 160(e), what constitutes a failure to bargain in good faith is a question of mixed law and fact, *NLRB v. Tomco Communications, Inc.*, 567 F.2d 871, 876 n. 2 (9th Cir.1978). "Where the issues are not purely factual, the Act does not explicitly direct the courts to exercise a particular measure of review. Manifestly, however, the measure of our oversight increases as the Board's determination approaches the purely legal." *Id.* Nevertheless, determining whether a party's conduct evidences a lack of good faith is an elusive inquiry, and the court should not lightly disregard the overall appraisal of the situation by the NLRB as the agency presumably equipped to deal with the specialized field of labor relations. *NLRB v. F. Strauss & Son, Inc.*, 536 F.2d 60, 65 (5th Cir.1976).

An employer's "refusal to attempt to substantiate a claim of inability to pay increased wages may support a finding of a failure to bargain in good faith" with the representative of his employees, *NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 153, 76 S.Ct. 753, 756, 100 L.Ed. 1027 (1956), and thereby constitute an unfair labor practice under the National Labor Relations Act. 29 U.S.C. § 158(a)(5). Nevertheless, the Supreme Court has expressly declined to adopt a rule that "union interests in arguably relevant information must always predominate over all other interests, however, [sic] legitimate." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 318, 99 S.Ct. 1123, 1132, 59 L.Ed.2d 333 (1979). The union is not automatically entitled to substantiating information in the exact manner requested in every case where the employer claims an inability to pay a wage increase. "Each case must turn upon its particular facts. The inquiry

must always be whether or not under the circumstances of the particular case the statutory obligation to bargain in good faith has been met." *Truitt Manufacturing Co.*, 351 U.S. at 153–54, 76 S.Ct. at 756 (footnote omitted).

■ Neither the courts nor the NLRB has ever "ruled that an employer is under an obligation 'to bare his books' to a union, or to any other employee representative." *Yakima Frozen Foods*, 130 NLRB 1269, 1273 n. 5 (1961), *enforced in part sub nom. Fruit & Vegetable Packers & Warehousemen Local 760 v. NLRB*, 316 F.2d 389 (D.C.Cir.1963). Where unions have sought information concededly relevant to the collective bargaining process, courts have found that there are "situations in which an employer's conditional offer to disclose may be warranted." *Detroit Edison Co.*, 440 U.S. at 318, 99 S.Ct. at 1133 (confidentiality of employee aptitude test results warrants restrictions on disclosure); *see also Oil, Chemical & Atomic Workers Local Union v. NLRB*, 711 F.2d 348, 362–63 (D.C.Cir.1983) (trade secrets and confidentiality of medical records may warrant restrictions on disclosure). In evaluating a requested condition, the important question is whether the employer has asserted a "legitimate and substantial" justification for limiting the disclosure. *See Detroit Edison*, 440 U.S. at 315–20, 99 S.Ct. at 1131–33; *Plough, Inc.*, 262 NLRB 1095, 1096 (1982).

For example, in *Yakima Frozen Foods*, 130 NRLB at 1269, the union sought access to the company's records to verify a claimed inability to pay a wage increase. The employer refused to allow members or employees of the union access to its records, and instead insisted that the records be audited by a licensed CPA not in the union's general employ. The company was afraid to let the union know its sources of supplies and consignees for fear of secondary boycotts, but believed that a licensed public accountant would not disclose such confidential information. *Id.* at 1271 n. 2. The NLRB held that the employer's offer was a reasonable one and that the

conditions "imposed on the audit cannot be said to have been unduly burdensome or unduly restrictive on the Union." *Id.* at 1273. On review, the D.C. circuit noted that "[c]learly there may be circumstances under which a businessman is justified in circumscribing the manner in which he makes his records available for inspection." *Fruit & Vegetable Packers & Warehousemen Local 760*, 316 F.2d at 391.

Those justifying circumstances are also present in the case before us. From the moment the hospital asserted its inability to pay a wage increase, it acknowledged its obligation to give the union the opportunity to verify that claim. The sole condition established by the hospital, that the union select an accountant having certain qualifications, was established to ensure that the accountant had the expertise to accurately forecast the hospital's income over the coming year. The hospital explained that it feared labor strife if an unqualified accountant erroneously should report that the hospital could pay a wage increase. The union did not assert, nor do we find, that the hospital raised this concern in bad faith or for some disingenuous reason. Indeed, "[t]he legislative history of the 1974 amendments to the Taft-Hartley Act extending its coverage to nonprofit health care facilities clearly demonstrates the overriding congressional concern that the self-organizational activities of health care employees not be allowed to 'disrupt the continuity of patient care.'" *St. John's Hospital and School of Nursing v. NLRB*, 557 F.2d 1368, 1374 (10th Cir.1977).

Under the circumstances, the hospital's concern over the unnecessary harm that could be precipitated by an unqualified auditor was legitimate and reasonable. The ALJ found that the hospital's concerns were not legitimate, apparently because the record failed to establish that the union would strike if the audit mistakenly concluded that the hospital could afford a wage increase. Actual proof that a strike was likely was not necessary, however, to conclude that the hospital's fear that a mistaken audit might adversely affect the bargaining process was reasonable, particularly in light of congress's especial con-

cern that union activities in hospitals not disrupt patient care. *See* S.Rep. No. 93–766, 93d Cong., 2d Sess. 7 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 3946, 3951. We can take notice that accountants, like lawyers, are no longer fungible. A CPA entirely qualified to interpret the records of ordinary business corporations may not have had the experience necessary to reach a sound forecast of the revenues and expenses of voluntary hospitals, dependent, as they generally are, on government financing.

Significantly, the hospital repeatedly offered to meet with the union to discuss any requirements that the union felt were unreasonable. It even modified the criteria on one occasion in an attempt to provide the union with an acceptable proposal, and on another occasion indicated that the selection of any of the "Big Eight" accounting firms, which include an adequate array of specialists, would suffice.

In contrast, the union ignored the hospital's offers to discuss the criteria and simply stated that the criteria were all unreasonable—without advancing a single specific objection. The union's chief negotiator later admitted that he had no idea what type of qualifications would be necessary to evaluate the hospital's claimed inability to pay a wage increase. Under the circumstances the union's failure to cooperate with the employer to develop acceptable criteria was unjustified.

Such "stonewalling" by a union should not be rewarded through enforcement action against the hospital. "When the employer presents a legitimate, good faith objection * * * [to providing access to information], and offers to cooperate with the union in reaching a mutually acceptable accommodation, it is incumbent on the union to attempt to reach some type of compromise with the employer * * *." *Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1098 (1st Cir.1981).

The union's almost immediate resort to the board was premature. *See id.* at 1098 (*quoting Emeryville Research Center, Shell Development Co. v. NLRB*, 441 F.2d 880, 886) (9th Cir.1971). In situations such as this the board should first give the parties an opportunity, through collective bargaining, to reach some mutually satisfactory agreement over the appropriate qualifications for the CPA. *See Plough, Inc.*, 262 NLRB at 1096.

We recognize that in some circumstances the parties, after reasonable attempts at negotiation, may be unable to reach agreement over appropriate qualifications. In such a case the board, of course, may determine whether an unfair labor practice has been committed. *See id.* at 1096. However, under the circumstances of this case, where the hospital's concern over qualifications of the auditor were legitimate and substantial, and where the union rejected all attempts at discussion of the point, made an unsupported categorical objection that all suggested criteria were unreasonable, and insisted that it could appoint anyone it chose to audit the hospital's records, there was insufficient evidence to support the board's conclusion that the hospital had failed to bargain in good faith.

Faced with similar facts, the ninth circuit noted that "[p]resentation of *bona fide* concerns by the Company, coupled with reasonable proposals designed to satisfy the needs of the Union and to achieve a mutually satisfactory resolution of the Union request, is simply not a refusal to bargain. On the contrary this is precisely the conduct the Labor Act is designed to foster." *Shell Oil Co. v. NLRB*, 457 F.2d 615, 620 (9th Cir.1972) (employer had stated specific objection to furnishing information in the form requested and offered to discuss the request in light of the union's needs and the employer's interests, but the union refused to discuss the matter and went directly to the board). *Accord Emeryville Research Center, Shell Development Co.*, at 883–84.

Citing *Oates Brothers, Inc.*, 135 NLRB 1295, 1297 (1962), the Administrative Law Judge also noted in her decision that "[i]t is well established that in the absence of special circumstances, an employer does not have the choice either affirmative or negative as to who is to represent employees for

any of the purposes of collective bargaining", and suggested that the hospital thus impermissibly interfered with the union's selection of its bargaining representative. It does not appear, however, that the auditor in these circumstances was intended to function as the union's bargaining representative as distinguished from a source of information.

Thus, the board's conclusion that the hospital failed to bargain in good faith with the union is not supported by substantial evidence on the record considered as a whole. Rather, "[o]n this record it would be unreasonable to conclude that the [hospital] was not voicing good faith concern, or that its proposals were not reasonable and serious." *Shell Oil Co.,* 457 F.2d at 620.

Enforcement denied.

Oakes, Circuit Judge, concurred with opinion.