Peter FRATTAROLI et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD et al., Respondents.

No. 78–1143.

United States Court of Appeals, First Circuit.

Argued Sept. 14, 1978.

Decided Dec. 28, 1978.

---

**16**

John P. Flynn, Braintree, Mass., on brief, for petitioners.

W. Christian Schumann, Atty., Washington, D.C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carol T. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Elinor Hadley Stillman and Sandra Shands Elligers, Attys., Washington, D.C., were on brief, for respondents.

James T. Grady, Boston, Mass., with whom Grady & McDonald, Boston, Mass., was on brief, for intervenors.

Before COFFIN, Chief Judge, KUNZIG,* Judge, U.S. Court of Claims, DUMBAULD,** District Judge.

COFFIN, Chief Judge.

The tortuous history of this case need not be repeated at great length. The essential facts and the first set of decisions generated during its progress through the NLRB are set out in our previous opinion, *Frattaroli v. NLRB*, 526 F.2d 1189 (1st Cir. 1975). That opinion vacated the Board's dismissal of the instant unfair labor practice charge and remanded for further proceedings. The complaint had charged that the Boston Cement Masons and Asphalt Layers Union No. 534 (the union) had violated 29 U.S.C. §§ 158(b)(1)(A) and (b)(2) by causing the employer to discriminate against the petitioners, Frattaroli and Ventresca, on the basis of the union's assertion that the petitioners had failed to pay "an exaction of money which was not an initiation fee or dues . . . as a condition of employment." The Board originally held that the complaint failed to state a cause of action because it failed to allege that the fee charged was excessive or discriminatory. Alternatively the Board held that the union's action was legitimate because it was based on the employer's violation of the terms of the collective bargaining agreement setting up an exclusive hiring hall.

■ We rejected the Board's first holding because, in part, unless the union offered an employment service to nonmembers "there can be no reason to require the complaint to anticipate that the union would claim that a fee for such service was justified. Moreover, it is scarcely self-evident that the use of the phrase 'initiation fee or dues,' in the complaint does not en-

* Sitting by designation.

** Of the Western District of Pennsylvania, sitting by designation.

compass all fees that a union can legitimately charge as a condition of employment, including a 'reasonable hiring hall fee.'" *Id.* at 1195. On the record before us then, we found an "absence of substantial evidence . . . that [the union] . . was operating an exclusive hiring hall." *Id.* at 1193. We likewise rejected the Board's alternative holding because, even if the contract provided for an exclusive referral system, we found no evidence that the union provided any service for nonmembers.[1] *Id.* at 1195. Therefore, we held that the union's defense that it had induced the employer's action in reliance on its contract was not maintainable. Our remand order permitted the Board to reopen the record because "possibly, the Board may yet find substantial evidence to support conclusions that, on the present record, we have been unable to accept." *Id.*

The Board accepted this offer and remanded the case to the ALJ to accept new evidence. The new hearing was limited to the issue of whether or not the union had in fact operated a legitimate, exclusive hiring hall service. The ALJ placed the burden on the union to come forward with this evidence since the union was raising the validity of its hiring hall as a defense to the charge of illegal exactions. The ALJ concluded that "in practice there was no exclusive hiring hall as the system operated through the years." The ALJ based his conclusion on the haphazard way in which the union's referral system operated and the fact that the "referral system was meant to be used and was used only by [union] members or to [the union's] best interests in referring minorities."[2] The Board reversed, holding that the burden ought to have been on the general counsel, that the evidence was irrelevant given the existence of the contract, and that the system as operated was legitimate.

■ We cannot accept the Board's conclusion that the issue on remand was not relevant. Whatever other courts may have held, our prior opinion is the law of this case. The Board did not seek review of our holdings. The parties relied on our analysis in forming their presentations to the Board's ALJ. The Board is not free to ignore or disagree with this court's pronouncements of law. We did not remand to allow the Board to state its view of the law, but to clarify or strengthen the factual support for its conclusions. For these reasons we must again reject the Board's attempt to ignore the operation of the referral system.[3] *See id.* at 1195 n. 6.

We do not see the placing of the evidentiary burden as a significant factor in this case since the burden itself carries no evidentiary weight. It is merely a procedural device to order the bringing in of evidence. Whichever party should have presented the case in chief, the finder of fact drew conclusions based on the evidence that was in the record. If on the basis of that evidence the factfinder concludes that the union was not

---

1. Whether or not the union's agreement with the employers permitted an exclusive hiring hall system—which the Board found it did— was not the issue. Even if such a system might be permitted, the union cannot expect people to adhere to it if the union does not in fact provide the service. Thus, we are not saying that the union waived its contract right. Rather we are saying that it is relevant whether or not the union had yet taken advantage of the contract right.

2. The ALJ found that according to the evidence presented, the union had referred only four nonmembers, three brothers named Dix and someone named Carlson. "[The union] needed to refer Blacks for EEO requirements and so they welcomed the Dixes. Added to that, that Carlson had applied for apprenticeship and was

sent out on jobs, it becomes crystal clear that Local 534's referral system was meant to be used and was used only by Local 534 members or to Local 534's best interests in referring minorities."

3. In so doing we also again reject the Board's position that the pleadings did not raise the issue. The complaint alleged a discriminatory fee. The fee would have been legitimate if the system were a legitimate exclusive hiring hall. Implicitly, therefore, the complaint assumed that the system that existed was something other than one that could support the fee requested. It is reasonable to require the union to meet the allegation by raising the relevant defense that its system was a legitimate, exclusive hiring hall.

operating an exclusive hiring hall, and if the union had had every opportunity to present evidence that it was operating an exclusive system, then we see no reason to upset the conclusion because, perhaps, the wrong party went first. Therefore, in the context of this case we need not resolve the dispute between the Board and its ALJ.

Finally, we turn to the ultimate factual issue—whether or not the union was operating an exclusive hiring hall through which the employer or the discharged employees should have worked.[4] We recently explained the special deference due the Board's findings of fact, even in the face of contrary findings by an ALJ. *NLRB v. Matouk Industries, Inc.,* 582 F.2d 125 (1st Cir. 1978). But, as we said there, there must be substantial evidence in the record to support the Board's conclusion, the ALJ's opinion is part of the record to be considered, and the Board must explain its reasons for disagreeing with the ALJ.

Having read the record, including the opinions of the Board and the ALJ, we cannot find substantial evidence to support the Board. Once again, the Board has failed to directly meet the ALJ's findings. Here the ALJ found that "in practice there was no exclusive hiring hall as the system operated through the years."[5] Primarily, the Board relies on saying the issue ought not to be part of the case. We have already explained why that reasoning must be rejected. The Board's only substantive argument against the ALJ's finding was the following:

"[T]he record at no point affirmatively established—nor did any party contend— that the Union does not offer referral services to nonmembers. Furthermore, that the Union does refer nonmembers is made clear on the record of the hearing following the remand. As we indicated above, Frattaroli and Ventresca had previously worked in [the Union's] jurisdiction and paid the 2-percent-of-take-home-pay service fee while doing so."

The record is replete with indications that the union operated the system for the benefit of its own members,[6] and the ALJ so found. The union showed that it had referred a handful of nonmembers, but the

---

4. Petitioners claim they were fired for nonpayment of a fee. The only legitimate basis advanced for the fee is that it was a service fee to help pay for the operation of the hiring hall. The union could not charge the fee if it did not in fact operate the service. This is true whether or not the union had a contractual right to operate an exclusive hiring hall. On this last point, for what it is worth, we are inclined to agree with the Board that the contract gives the union that right. *See Frattaroli v. NLRB,* 526 F.2d 1189, 1193 n. 4 (1st Cir. 1975). But the issue here is not whether the union possessed the right, but whether the union exercised the right. *See* note 1, *supra.* This ultimate fact also disposes of the union's alternative defense—that it was motivated not by the nonpayment of the fee but by the employer's bypassing of the referral system. "The Local could not demand the replacement of petitioners for bypassing a hiring mechanism it did not in fact provide." *Frattaroli, supra,* 526 F.2d at 1193.

5. The Board suggests that, whatever the union's operation had been in more prosperous times, by the time this job was to begin the union had served notice on the employer that it would insist on an opportunity to make referrals for the positions filled by Frattaroli and Ventresca. From this the Board concludes that the union was enforcing its contract rights at the relevant time. Even accepting the Board's interpretation of the pre-job contacts between the union and the employer, we are faced with the ALJ's specific, supported finding that at the time in question the union operated no legitimate exclusive hiring hall through which nonmembers could seek work. There is not substantial evidence in the record to support the conclusion the Board would draw. Rather, given the absence of a legitimate hiring hall, the pressure being put on contractors to hire through the union was, as the ALJ found, "so that it could furnish *members* to man every position available with every contractor in the Boston area." (Emphasis added.) We find additional support for our conclusion in the fact that after Frattaroli had paid everything the union claimed he owed and asked the assistant business manager to give him back the job, the assistant business manager refused and told him to seek work somewhere outside Boston.

6. In addition to the evidence cited by the ALJ, we consider it important that the union's assistant business manager suggested to the individual petitioners and to the employer that jobs in the union's jurisdiction ought to go to members of the union and that outsiders ought to seek work elsewhere.

ALJ dismissed that showing because the individuals referred were either useful to the union in meeting its quota requirements or had applied for the union's apprenticeship program. *See* note 2, *supra.* The Board's opinion does not refute these factual findings.[7] We do not infer from the fact that Frattaroli and Ventresca had previously worked and paid the union a fee that the union had referred them. In the first place, the inference is circular in that it assumes a legitimate referral system in order to establish the existence of such a system. In the second place, the facts indicate the contrary. If both men routinely operated through the union's referral system and recognized it as legitimate and exclusive, it is likely that they would have gone through it again in the situation at issue. Moreover, Ventresca testified that he had worked on a job previously without having been referred. In sum, the record supports the ALJ's findings with respect to the operation of the system, and we do not think the Board's opinion undermines those findings.

■ Since the union was operating a referral system for members only and not an exclusive hiring hall, the fee sought from Ventresca and Frattaroli was not legitimate, and the union violated §§ 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act. We remand the case to the Board for the limited purpose of considering what relief is appropriate.

*So ordered.*

---

7. The Board's brief to us does attempt to undercut these findings as unjustified hypothesis. But the inferences drawn by the ALJ seem legitimate to us. In any event, the Board must meet its obligation to set out and explain its factual findings in its official opinion rather than waiting until it is arguing before us.