JOSÉ A. CABRANES, Circuit Judge,
concurring:
I join Judge Livingston’s well-reasoned opinion, which faithfully applies difficult Circuit precedent. I write separately merely to indicate how, in future cases, the National Labor Relations Board (the “Board”) might align its precedents more closely with the teaching of the Supreme Court in NLRB v. Truitt Manufacturing Co., 351 U.S. 149, 153, 76 S.Ct. 753, 100 L.Ed. 1027 (1956). In my view, the facts in this case could, in principle, support a conclusion that Stella D’oro claimed an “inability to pay” for existing wages and employee benefits when it claimed that its operations were unprofitable. We cannot enforce the Board’s decision to that effect, however, because the Board did not adequately explain its reasons for not following our decision in Stroehmann Bakeries, Inc. v. NLRB, 95 F.3d 218 (2d Cir.1996), which equated the concept of “inability to pay” with insolvency. When applying the National Labor Relations Act, panels of this Court are bound by the decisions of prior panels unless overruled by the Supreme Court or an en banc panel of this Court, In re Zarnel, 619 F.3d 156, 168 (2d Cir.2010), or controverted through “reasoned decisionmaking” of the Board, Allentown Mack Sales & Serv., Inc. v. *296 NLRB, 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998). As Judge Livingston explains, the Board’s analysis does not meet this standard.
In time, the Board may have occasion to revisit this issue and produce a more precise ruling that, in turn, will implicate principles of agency deference, thereby permitting Courts of Appeals to reconsider the concept of “inability to pay.” In this event, the Board should explain that an employer claims an “inability to pay” for particular labor costs, within the meaning of the Supreme Court’s decision in Truitt, when the employer asserts in the course of bargaining that its operations are unprofitable given those costs.
A.
The refusal of an employer “to attempt to substantiate a claim of inability to pay increased wages,” the Supreme Court held in Truitt, “may support a finding of a failure to bargain in good faith,” depending on the circumstances of a particular case. 351 U.S. at 153, 76 S.Ct. 753. The Court explained:
Good-faith bargaining necessarily requires that claims made by either bargainer should be honest claims. This is true about an asserted inability to pay an increase in wages. If such an argument is important enough to present in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy. And it would certainly not be farfetched for a trier of fact to reach the conclusion that bargaining lacks good faith when an employer mechanically repeats a claim of inability to pay without making the slightest effort to substantiate the claim.
Id. at 152-53, 76 S.Ct. 753 (emphasis supplied); see also N.Y. Printing Pressmen & Offset Workers Union No. 51, Int’l Printing v. NLRB, 538 F.2d 496, 499-500 (2d Cir.1976) (offering a particularly lucid explanation of the duty to substantiate under Truitt).
However, the Supreme Court in Truitt did not define the term “inability to pay,” and courts later disagreed about whether an employer must substantiate an assertion “that complying with the union’s request would place it at a competitive disadvantage.” Torrington Extend-A-Care Emp. Ass’n v. NLRB, 17 F.3d 580, 588 (2d Cir.1994). The Board settled this question in Nielsen Lithographing Co., 305 N.L.R.B. 697 (1991), holding that a “claim of competitive disadvantage is not the same as a claim of financial inability to pay,” id. at 699, and that the difference between these two types of claims is “critical” in determining whether an employer has a duty to substantiate, id. at 700; see also Stroehmann, 95 F.3d at 222-23. In short, an employer need not substantiate an assertion that it is not able to “make as much of a profit as it wishe[s].” Nielsen, 305 N.L.R.B. at 701.
The Board’s decision in Nielsen, however, presupposes (and makes explicit) that an employer is “unable to pay” for certain labor costs if doing so would leave the business “unprofitable.” See id. (“Nothing in the [employer’s] statements to the Union ... fairly suggests that the [employer] would be unprofitable and thus unable to pay during the term of the contract under negotiation.” (emphases supplied)). In other words, as the Board explained two years after deciding Nielsen, a duty to substantiate can arise when an employer asserts in the course of bargaining that it cannot “economically afford” existing labor costs. Shell Co. (Puerto Rico) Ltd., 313 N.L.R.B. 133, 133 (1993); see also Buffalo Concrete, 276 N.L.R.B. 839, 840 (1985) (“inability to afford the cost”). By contrast, a duty to substantiate was not triggered in Nielsen because “the employer repeatedly stated that it was still making a profit.” Shell Co., 313 N.L.R.B. at 133 (emphasis supplied).
*297 In sum, the doctrine established by the Supreme Court in Truitt uses “inability to pay” as a term of art that should not be understood literally as applying only when the employer is broke. Rather, “[t]he obligation [to substantiate usually] arises if the Employer puts in issue its ability to afford the Union’s demands.”[1] N.Y. Printing Pressmen, 538 F.2d at 501 (emphasis supplied).
B.
Unfortunately, the Board seems to have confused matters in Nielsen by referring to an employer’s “losses of business to competitors,” 305 N.L.R.B. at 697, as “business losses,” id. at 700. The Board explained that “the employer who claims only economic difficulties or business losses or the prospect of layoffs is simply saying that it does not want to pay,” id., by which the Board meant that “the employer who claims only economic difficulties or [losses of business to competitors] or the prospect of layoffs is simply saying that it does not want to pay,”[2] id.
The Board’s use of the term “business losses” to mean “losses of business to competitors” was unintentionally confusing. In normal parlance, the term “business losses” refers to the depletion of assets (or *298 accumulation of debt) resulting from “a business operation where expenditures exceed receipts” — not losses of a business’s customers or market share. JOHN Black ET AL, OXFORD DICTIONARY OF ECONOMICS (3d ed. 2009). In other words, a company-earning “profit” cannot also incur “business losses” because in this context those terms are antonyms. Nonetheless, imprecise use of language does not warrant a change in the relevant legal doctrine.[3]
Our opinion in Stroehmann Bakeries, Inc. v. NLRB, 95 F.3d 218 (2d Cir.1996), suggests that we may have misunderstood the Board’s idiosyncratic use of the term “business losses.” Pointing to the Board’s decision in Nielsen, we stated that “where an employer claims only general economic difficulties or business losses as the reason for its position, the employer may lawfully refuse to hand over financial information.” Stroehmann, 95 F.3d at 222. It is not entirely clear what we meant, but we likely understood “business losses” to mean financial losses (rather than the Board’s idiosyncratic meaning — losses of customers and market share).
The Board need not, and should not, perpetuate that mistake. Instead, it can, and should, clarify that an employer’s assertion of unprofitability is an assertion of “inability to pay” for labor costs within the meaning of Truitt. Indeed, the Board made that point explicitly in Nielsen, 305 N.L.R.B. at 701, as did the Court of Appeals decision enforcing the Board’s order, Nielsen II, 977 F.2d at 1170. And it defies common sense to think that employees interested in preserving their jobs will wait until their employer becomes- insolvent before they are prepared to discuss, or make, significant bargaining concessions.
Finally, it is worth stressing that the Supreme Court in Truitt did not confine the duty to substantiate to assertions of an “inability to pay” for particular labor costs. “There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties.” NLRB v. Acme Indus. Co., 385 U.S. 432, 435-36, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); see also Stroehmann, 95 F.3d at 222 (“Good faith requires that an employer explain its positions on various issues and that obligation in turn may require that it provide relevant back-up materials, such as financial information.”). Whether an employer’s assertions in bargaining give rise to this “general obligation” to substantiate will always depend on the totality of the circumstances, see Truitt, 351 U.S. at 153-54, 76 S.Ct. 753, and claims of unprofitability can trigger this duty regardless of whether they fall within the scope of the term of art “inability to pay.” Indeed, generating profit is indisputably the paramount (and existential) concern of a business entity, and when an employer claims during bargaining that it is unprofitable, that allegation may be “important enough to require some sort of proof of its accuracy.” Id. at 153, 76 S.Ct. 753. Our decision does not cast doubt on this principle.[4] If a union faced with an *299 employer’s claim of unprofitability would “give serious consideration to making the concessions the employer is demanding, or at least [to] making some concessions,” Nielsen I, 854 F.2d at 1065, the duty to substantiate can, and generally should, apply-

. Claims of unprofitability must be "put in issue,” N.Y. Printing Pressmen, 538 F.2d at 501, to trigger a duty to substantiate. See, e.g., Atlanta Hilton & Tower, 271 N.L.R.B. 1600, 1602 (1984) (no asserted "inability to pay” where employer would not confirm or deny that it was profitable). For this reason, an employer’s acknowledgment of prior financial losses “does not necessarily place it in the posture of having pleaded an inability to pay” in the relevant labor negotiation. NLRB v. Harvstone Manufacturing Co., 785 F.2d 570, 576 n. 5 (7th Cir.1986) (citing Vore Cinema Corp., 254 N.L.R.B. 1288, 1292 (1981)). In Vore, for example, an employer had previously stated that its operations were unprofitable, but these statements were made "in a different context” and "long before [labor] negotiations began” and did not "evidence that [the employer's] position in negotiations was based on a plea of poverty.” Vore, 254 N.L.R.B. at 1292 (ALJ opinion) (emphasis supplied).

. Nielsen, one must recall, involved an employer’s assertions that "wage cuts were necessary if the company was to remain competitive and reverse a trend of losing business to lower-cost competitors,” Nielsen Lithographing Co. v. NLRB, 854 F.2d 1063, 1065 (7th Cir.1988) ("Nielsen /”), but the parties agreed that the employer could be profitable in the short term, see id. at 1064. As the Court of Appeals for the Seventh Circuit (the "Seventh Circuit”) explained in denying the Board's first petition for enforcement, ”[t]here is ... no contradiction in a company’s stating on the one hand that it is profitable and on the other hand that its costs are higher than its competitors' and it wants to reduce them.” Id. The Board in Nielsen also explicitly endorsed the approach taken by the Seventh Circuit in Harvstone, which equated the term “inability to pay” with a company’s “financial inability to pay,” 785 F.2d at 575, and its inability to "afford to pay,” id. at 577. The Board dissenting opinion in Nielsen also illustrates the Board’s idiosyncratic use of the term "business losses” to mean "losses of business.” See Nielsen, 305 N.L.R.B. at 705 (Stephens, Member, dissenting) (equating "business losses” with "loss of business”); id. at 708 (”[T]he [employer] directly placed its economic condition at issue by its repeated references to the specific loss of jobs and business that already had occurred, and by its statements that additional losses would continue to occur in the absence of union concessions.” (emphases supplied)). The Seventh Circuit decision enforcing the Board’s Nielsen order also emphasized the importance of claims of unprofitability: "If the employer claims that it cannot afford to pay ... the [contested] wage, the union is entitled to demand substantiation.” Graphic Commc'ns Int’l Union, Local 508 O-K-I, AFL-CIO v. NLRB, 977 F.2d 1168, 1170 (7th Cir.1992) ("Nielsen II”); see also ConAgra, Inc., v. NLRB, 117 F.3d 1435, 1443 (D.C.Cir.1997) (equating an inability to pay with an inability to afford, and emphasizing that the employer had "stated repeatedly that the company remained profitable”).

. Administrative adjudication requires “reasoned decisionmaking,” Allentown Mack, 522 U.S. at 374, 118 S.Ct. 818, and therefore no weight should be placed on the NLRB’s subsequent statements that " '[(Inability to pay’ means that the company presently has insufficient assets to pay or that it would have insufficient assets to pay during the life of the contract that is being negotiated,” AMF Trucking & Warehousing, Inc., 342 N.L.R.B. 1125, 1126 (2004) (emphases supplied). The Board has not explained why "inability to pay” has evolved from meaning that an employer “could not afford” certain labor costs, see, e.g., N.Y. Printing Pressmen, 538 F.2d at 499, to meaning literal insolvency.

. I agree with Judge Livingston that Stroeh-mann adopts a narrow understanding of the term "inability to pay” — an interpretation *299 that I encourage the Board to reject along the lines proposed here. Importantly, however, Stroehmann and Judge Livingston's opinion do not confine Truitt to assertions of "inability to pay,” thus giving that term talismanic importance. In Stroehmann, no duty to substantiate under Truitt could have applied because the union requested "comprehensive and detailed” financial information with "virtually no relevance to the issues at stake in bargaining” and "better designed to create a legal issue than to inform bargaining,” thus indicating that the union rather than the employer was bargaining in bad faith. 95 F.3d at 223. Moreover, we explained that, although the relevant facility was unprofitable, the totality of the circumstances demonstrated that the employer did not place its unpro-fitability at issue in bargaining. Id..; see also note 1, ante (assertions must be "put in issue” to trigger a duty to substantiate). And here, because the Board’s decision is based on a purported claim of "inability to pay,” and because the Board did not offer a reasoned explanation for departing from our interpretation of that term in Stroehmann, I join Judge Livingston's opinion in full.